SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

SUGAR CREEK CHARTER SCHOOL, INC., KENNEDY CHARTER SCHOOL, CROSS-
ROADS CHARTER SCHOOL, CAROLINA INTERNATIONAL SCHOOL, AND
METROLINA REGIONAL SCHOLARS ACADEMY, PLAINTIFFS v. THE CHARLOTTE-
MECKLENBURG BOARD OF EDUCATION AND PETER C. GORMAN,[1] SUPER-
INTENDENT IN HIS OFFICIAL CAPACITY, D/B/A "CHARLOTTE-MECKLENBURG
SCHOOLS," DEFENDANTS

No. COA07-207

(Filed 5 February 2008)

**1. Schools and Education— charter school funding by
county—allocation of pre-kindergarten funds**

The trial court erred by excluding an at-risk pre-kindergarten
appropriation from amounts to be apportioned between charter
schools and the Charlotte-Mecklenburg Board of Education. As-
suming that the kindergarten program (Bright Beginnings) is a
special program, the Board of County Commissioners would have
been within its statutory authority to allocate money to a special
program fund, but instead allocated the money to the local cur-
rent expense fund, earmarked for the program. The charter
schools were entitled to a pro rata share of all the money in the
local current expense fund.

**2. Schools and Education— charter school funding by
county—fund from which money appropriated—not all
appropriations included**

The statutory scheme for calculating a county's per pupil
funding for charter schools allows the transfer of local appropri-
ations among funds so that not all of the appropriations to the
school system are included in the current local expense fund,
from which the charter school funding is appropriated.

**3. Schools and Education— charter school funding by
county—allocation of under-achieving high school program**

The trial court did not err in an action to determine a coun-
ty's funding for charter schools by concluding that an under--

---

1. Plaintiffs' original Complaint named James L. Pughsley, in his official capacity
as the Superintendent of the Charlotte-Mecklenburg Schools. Subsequent to the filing
of the Complaint and an Amended Complaint, Frances Haithcock was appointed
Superintendent of Charlotte-Mecklenburg Schools, and the caption of this matter was
altered to reflect this change. Subsequent to the trial court's entering its Declaratory
Judgment Order dated 27 September 2006, but prior to the parties' filing the Joint
Record on Appeal, Peter C. Gorman was appointed Superintendent of Charlotte-
Mecklenburg Schools, and the caption in this matter was modified accordingly.

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

achieving high school program was not a special program, and therefore correctly determined that the money should have been included in the local current expense fund, from which the funds for the school systems and charter schools were appropriated.

**4. Schools and Education— distribution of funds to charter schools—calculation of enrollment**

The trial court did not err in an action to determine the distribution of county funds to charter schools by holding that the method of calculating the funding was inconsistent with N.C.G.S. § 115C-238.29H, which required the county to transfer to the charter schools an amount equal to the per pupil local expense appropriation received by the Charlotte-Mecklenburg Board of Education (CMS). The calculation of enrollment resulted in the CMS per pupil amount increasing as enrollment for CMS schools and charter schools decreased during the year.

**5. Schools and Education— charter school funding—statute of limitations—determination of correct amount at end of year**

The trial court did not err by ruling that plaintiff charter school was not barred by the statute of limitations from filing its claim concerning funding. The action was filed within the three-year limitations period because the school system made payments in such a way that plaintiffs could not determine whether the correct statutory amount had been paid until the end of the fiscal year.

Appeal by Plaintiffs and Defendants from judgment entered 27 September 2006 by Judge Robert Ervin in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 September 2007.

*Robinson, Bradshaw & Hinson, P.A., by Richard A. Vinroot, for Plaintiffs.*

*Helms Mulliss & Wicker, PLLC, by James G. Middlebrooks, for Defendants.*

STEPHENS, Judge.

## I. FACTS AND PROCEDURE

This case was initiated when Plaintiffs Sugar Creek Charter School, Inc., Kennedy Charter School, Crossroads Charter School, and Carolina International School filed a Complaint against De-

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

fendants in Mecklenburg County Superior Court on 25 May 2005. Thereafter, on 17 August 2005, Plaintiffs filed an Amended Complaint adding Metrolina Regional Scholars Academy as an additional Plaintiff. Plaintiffs ("Charter Schools") sought damages for "unpaid appropriations" based upon allegations that the manner in which Defendants, the Charlotte-Mecklenburg Board of Education and the Charlotte-Mecklenburg County Superintendent of Schools (collectively "CMS"), apportioned funds appropriated for public education was improper, thereby causing the Charter Schools to be "underfunded."

For each of the fiscal years at issue, from 2001-02 through 2004-05, CMS submitted a proposed budget to the Mecklenburg Board of County Commissioners ("Board"). After receiving the proposed budget, the Board determined the amount of money to appropriate to CMS for the budget year and appropriated that amount to CMS.

Each budget proposal and subsequent appropriation included an allocation for the purpose of funding a pre-kindergarten program called Bright Beginnings. Bright Beginnings served approximately 3,100 at-risk four-year-olds in Mecklenburg County each year. The program was not open to all four-year-olds, and applicants were screened to determine their eligibility. All of the children who participated in Bright Beginnings were younger than the populations served by both the CMS schools and the Charter Schools.

In the fall of 2004, after the normal local appropriation process had been concluded for the 2004-05 fiscal year, the Board asked CMS for a proposal to assist students at three under-achieving high schools in the Charlotte-Mecklenburg public school system. CMS sent a proposal to the Board which subsequently awarded CMS a High School Challenge grant of $6,000,000 to assist the three schools. From the 2001-02 through 2004-05 school years, CMS did not apportion to the Charter Schools any of the appropriations used for Bright Beginnings or the High School Challenge.

As required by N.C. Gen. Stat. § 115C-238.29H(b), CMS funded the Charter Schools based on a per pupil local current expense figure. CMS arrived at this figure at the beginning of each academic year by first estimating the total student enrollment for the CMS and the Charter Schools, and then dividing the projected funding from the Board for the local current expense fund for the year (minus the Bright Beginnings and High School Challenge amounts) by the esti-

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

mated student enrollment. Each month of the school year, the Charter Schools submitted reports to CMS showing the actual number of students attending the Charter Schools. CMS then made periodic payments to the Charter Schools of amounts determined by multiplying the per pupil local current expense figure by the actual number of students attending the Charter Schools in a given month. CMS did not require public schools to submit similar reports detailing actual monthly attendance numbers to receive funding; instead, CMS retained the balance of the local current expense fund not transferred to the Charter Schools for CMS public school students.

On 2 February 2006, the Charter Schools moved for summary judgment, and on 27 September 2006, Judge Ervin entered a Declaratory Judgment Order. Judge Ervin concluded, among other things, that (i) Bright Beginnings was a "special program," and, therefore, CMS could fund Bright Beginnings without appropriating that money between CMS and the Charter Schools; (ii) the statute of limitations precluded Metrolina Regional Scholars Academy from pursuing claims for the fiscal year 2001-02, but that all the other Charter Schools could pursue claims for the fiscal years 2001-02 forward; (iii) CMS must include the money received for the High School Challenge in the local current expense fund to be apportioned between CMS and the Charter Schools; and (iv) CMS's method of calculating the per pupil local current expense appropriation is inconsistent with N.C. Gen. Stat. § 115C-238.29H(b).

The Charter Schools appealed the trial court's ruling that the money received by CMS for Bright Beginnings should not be included in the amounts to be apportioned between CMS and the Charter Schools. CMS appealed the trial court's rulings that the Charter Schools' claims for the 2001-02 fiscal year were not barred by the statute of limitations, that CMS's method of calculating the local per pupil funding was inconsistent with the statute, and that the money received for the High School Challenge must be included in the amounts to be apportioned between CMS and the Charter Schools.

## II. STANDARD OF REVIEW

In reviewing a grant of summary judgment in a declaratory judgment action, this Court examines the whole record to determine "(1) whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) whether the moving

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

party was entitled to judgment as a matter of law." *Tucker v. City of Kannapolis*, 159 N.C. App. 174, 178, 582 S.E.2d 697, 699 (2003). Here, the facts are undisputed; therefore, the only question is whether the Charter Schools were entitled to summary judgment as a matter of law.

## III. BRIGHT BEGINNINGS

[1] The Charter Schools contend the trial court erred by excluding the portion of the Board's appropriations used for Bright Beginnings from the amounts to be apportioned between CMS and the Charter Schools for the fiscal years 2001-02 through 2004-05. We agree.

For each of the fiscal years at issue, CMS submitted a proposed budget to the Board. N.C. Gen. Stat. § 115C-429(a) (2001). After receiving the proposed budget from CMS, the Board determined the amount of county revenues to appropriate to CMS for the budget year and then appropriated those revenues to CMS. N.C. Gen. Stat. § 115C-429(b) (2001); N.C. Gen. Stat. § 115C-437 (2001). "The board of county commissioners may, in its discretion, allocate part or all of its appropriation by purpose, function, or project as defined in the uniform budget format." N.C. Gen. Stat. § 115C-429(b).

CMS must adhere to the uniform budget format promulgated by the State Board of Education. N.C. Gen. Stat. § 115C-426 (2001). Pursuant to N.C. Gen. Stat. § 115C-426:

(c). The uniform budget format shall require the following funds:

(1) The State Public School Fund.

(2) The local current expense fund.

(3) The capital outlay fund.

In addition, other funds may be required to account for trust funds, federal grants restricted as to use, and special programs. Each local school administrative unit shall maintain those funds shown in the uniform budget format that are applicable to its operations.

(d) The State Public School Fund shall include appropriations for the current operating expenses of the public school system from moneys made available to the local school administrative unit by the State Board of Education.

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

(e) The local current expense fund shall include appropriations sufficient, when added to appropriations from the State Public School Fund, for the current operating expense of the public school system . . . . These appropriations shall be funded by revenues accruing to the local school administrative unit by [among other sources] . . . moneys made available to the local school administrative unit by the board of county commissioners . . . .

. . . .

Appropriations in the capital outlay fund shall be funded by revenues made available for capital outlay purposes by the State Board of Education and the board of county commissioners . . . .

(g) Other funds shall include appropriations for such purposes funded from such sources as may be prescribed by the uniform budget format.

*Id.*

Thus, reading N.C. Gen. Stat. §§ 115C-429 and 115C-426 together, the Board may, in its discretion, allocate part or all of its appropriation to CMS for local current operating expenses, capital outlay expenses, or other special program expenses. The Board is constrained only by the mandate that it allocate to the local current expense fund sufficient money to augment the State Public School Fund for the current operating expenses of the public school system. N.C. Gen. Stat. § 115C-426(e). CMS must maintain separate funds for current operating expenses, capital outlay, and any special programs. A " '[f]und' is an independent fiscal and accounting entity . . . for the purpose of carrying on specific activities or attaining certain objectives . . . ." N.C. Gen. Stat. § 115C-423(5) (2001).

Accordingly, money made available to CMS by the Board for current operating expenses shall be deposited into the local current expense fund; money made available to CMS by the Board for capital outlay shall be deposited into the capital outlay fund; and money made available to CMS by the Board for special programs shall be deposited into funds specifically established for those special programs.

"If a student attends a charter school, the local school administrative unit in which the child resides shall transfer to the charter school an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year."

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

N.C. Gen. Stat. § 115C-238.29H(b) (2001).[2] In *Francine Delany New Sch. for Children, Inc. v. Asheville City Bd. of Educ.*, 150 N.C. App. 338, 563 S.E.2d 92 (2002), *disc. review denied*, 356 N.C. 670, 577 S.E.2d 117 (2003), this Court held that the phrase "local current expense appropriation" in the Charter School Funding Statute, N.C. Gen. Stat. § 115C-238.29H(b), is synonymous with the phrase "local current expense fund" in the School Budget and Fiscal Control Act, N.C. Gen. Stat. § 115C-426(e). *Delany*, 150 N.C. App. at 346, 563 S.E.2d at 98. Thus, the Charter Schools are entitled to an amount equal to the per pupil amount of all money contained in the local current expense fund.

In its ruling in this case, the trial court made the following conclusion of law:

2. Bright Beginnings is a "special program" under N.C. Gen. Stat. § 115C-426(c) because it benefits pre-kindergarten students, who are not students in the public school system. In each of the years in question, the at-risk, pre-kindergarten nature of the Bright Beginnings program was spelled out in the CMS budget requests to the Mecklenburg County Board of County Commissioners, which, in turn, funded the requests. Therefore, CMS was and is permitted to fund Bright Beginnings without apportioning local funds between itself and the [C]harter [S]chools (*i.e.*, by excluding the Bright Beginnings amounts in each of the fiscal years in dispute set forth above).

The term "special program" is not defined by statute. Assuming *arguendo*, that Bright Beginnings was a special program, the Board would have been within its statutory authority to allocate money for the program, separate and apart from money allocated for current operating expenses, capital outlay expenses, or other special programs. However, instead of allocating money to a Bright Beginnings special program fund, the County Commissioners allocated the money for Bright Beginnings to the local current expense fund, earmarked for Bright Beginnings. Furthermore, CMS was required to set up and maintain a separate special fund for the Bright Beginnings program, pursuant to N.C. Gen. Stat. § 115C-426(c); this they failed to do. As a result, the Bright Beginnings money was requested for the local current expense fund, allocated to the local current expense

---

2. "The amount transferred under this subsection that consists of revenue derived from supplemental taxes shall be transferred only to a charter school located in the tax district for which these taxes are levied and in which the student resides." N.C. Gen. Stat. § 115C-238.29H(b) (2003).

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

fund, deposited into the local current expense fund, and deducted from the local current expense fund. Because the Charter Schools were entitled to a *pro rata* share of all the money in the local current expense fund, CMS was required to apportion this money on a per pupil basis between CMS and the Charter Schools before the Bright Beginnings program was funded.

Accordingly, the trial court erred by excluding the portion of the Board's current local expense appropriations used for Bright Beginnings from the amounts that should have been apportioned between CMS and the Charter Schools. Thus, we reverse the trial court's order as it pertains to the Bright Beginnings program and remand to the trial court for entry of order determining the amount of CMS's underpayment of the Charter Schools due to CMS's failure to properly apportion the Bright Beginnings funds, and requiring CMS to pay such amount to the Charter Schools.

[2] The Charter Schools further argue that the fact the uniform budget format mandates an "independent fiscal and accounting entity" for a special program does not address the need to apportion the revenues diverted to that fund where, as here, those revenues originally are part of the moneys "made available" to CMS by the Board. In essence, the Charter Schools contend that *all* moneys made available to CMS by the Board are part of the current local expense fund, and thus must be apportioned *pro rata* between the CMS schools and the Charter Schools before any of those moneys are diverted to other funds. This is inaccurate.

Pursuant to N.C. Gen. Stat. § 115C-426(e), the local current expense fund includes "moneys made available to the local school administrative unit by the board of county commissioners . . . ." Additionally, N.C. Gen. Stat. § 115C-426(f) provides that "the capital outlay fund shall be funded by revenues made available for capital outlay purposes by . . . the board of county commissioners . . . ." Finally, N.C. Gen. Stat. § 115C-426(g) states that "[o]ther funds shall include appropriations for such purposes funded from such sources as may be prescribed by the uniform budget format." Accordingly, CMS's local current expense fund, capital outlay fund, and any other funds it establishes may all include money made available to CMS by the Board.

Furthermore, pursuant to N.C. Gen. Stat. § 115C-431, "[i]f the board of education determines that the amount of money appropriated to the local current expense fund, or the capital outlay fund, or

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

both, by the board of county commissioners is not sufficient[,]" then a meeting between the two boards must be held to discuss the matter. This statute explicitly contradicts the Charter Schools' contention that all the moneys made available to CMS by the Board are included in the local current expense fund.

Finally, pursuant to N.C. Gen. Stat. § 115C-433(d), "[CMS] may amend the budget to transfer money to or from the capital outlay fund to or from any other fund . . . ." This statute contemplates transferring local appropriations to and from the capital outlay fund, to or from any number of other funds, not just the local current expense fund. Therefore, since "[t]he board of county commissioners may, in its discretion, allocate part or all of its appropriation by purpose, function, or project as defined in the uniform budget format[,]" N.C. Gen. Stat. § 115C-429(b), the Board may allocate its appropriations among the different funds set up by CMS. Thus, contrary to the Charter Schools' contention, not *all* appropriations from the Board to CMS are included in the current local expense fund and thus subject to apportionment under N.C. Gen. Stat. § 115C-238.29H(b). Since the Charter Schools are only entitled to a *pro rata* share of all money in the local current expense fund, the Charter Schools are therefore entitled to a *pro rata* share of the money made available to CMS by the County Commissioners specifically for the current local expense fund.

## IV. THE HIGH SCHOOL CHALLENGE

[3] CMS contends the trial court erred by including the portion of the Board's appropriations used for the High School Challenge in the amounts to be apportioned between CMS and the Charter Schools for the fiscal year 2004-05. We disagree.

As discussed above, the Board "may, in its discretion, allocate part or all of its appropriation by purpose, function, or project as defined in the uniform budget format." N.C. Gen. Stat. § 115C-429(b). Additionally, CMS must adhere to the uniform budget format and maintain separate funds for current operating expenses, capital outlay, and special programs. N.C. Gen. Stat. § 115C-426. Finally, the Charter Schools are entitled to a per pupil, *pro rata* share of the money in the local current expense fund. *Delany*, 150 N.C. App. 338, 563 S.E.2d 92.

In its ruling, the trial court made the following conclusion of law:

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

3. The High School Challenge program is a local program funded by Mecklenburg County. The funding for this program comes from the "moneys made available to the local school administrative unit by the board of county commissioners." See N.C.G.S. § 115C-426(e). Because these funds are directed at students served by the public school system, CMS must calculate the "per pupil local current expense" amount due the [C]harter [S]chools under N.C. Gen. Stat. § 115C-238.29H(b) in a manner that includes the monies used for the High School Challenge program (*i.e.*, by including the High School Challenge amount in 2004-05 as set forth above).

As the trial court determined that the High School Challenge was not a special program, the trial court correctly concluded that the money received by CMS from the Board for the program should have been included in the local current expense fund and apportioned between CMS and the Charter Schools. We need not address whether the trial court was correct in deciding that this was not a special program because, even if the High School Challenge was a special program, CMS failed to set up the required separate special fund for the High School Challenge money. Consequently, since the High School Challenge money became part of the local current expense fund, and since the Charter Schools were entitled to a *pro rata* share of all the moneys in the local current expense fund, CMS was required to apportion the moneys received for the High School Challenge on a per pupil basis between CMS and the Charter Schools before the High School Challenge program was funded.

Accordingly, the trial court did not err in determining that the Board's appropriations to CMS for the High School Challenge should have been apportioned between CMS and the Charter Schools before the High School Challenge program was funded.

## V. PER PUPIL FUNDING CALCULATION

[4] CMS argues that the trial court erred in ruling that CMS's method of calculating the local per pupil funding was inconsistent with N.C. Gen. Stat. § 115C-238.29H. We disagree.

Pursuant to N.C. Gen. Stat. § 115C-238.29H(b), "[i]f a student attends a charter school, the local school administrative unit in which the child resides shall transfer to the charter school an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year." In its ruling, the trial court made the following conclusions of law:

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

5. CMS's method of calculating the per pupil funding amount was inconsistent with N.C. Gen. Stat. § 115C-238.29H because it failed to allocate the funds to the [C]harter [S]chools and CMS on the same basis.

6. To properly apportion the local current expense funds it received from Mecklenburg County during the period in dispute, CMS is directed to recalculate the amounts due to or from the [C]harter [S]chools in a manner consistent with the foregoing conclusions of law for that period of time. In doing so, CMS may either calculate the amounts due for both itself and the [C]harter [S]chools based on beginning of the year projections of the student population, on enrollments, or some other method, so long as that method is consistent for both CMS and the [C]harter [S]chools. The Court will not impose its own method of apportioning the local current expense funds unless the method that CMS proposes fails to apportion those funds between CMS and the [C]harter [S]chools in a manner consistent with the statute.

CMS calculated the per pupil local current expense figure at the beginning of each school year based on estimates of total enrollment for the CMS schools and the Charter Schools. CMS then paid the Charter Schools based on actual monthly enrollment of students in the Charter Schools. However, CMS did not pay the CMS schools based on actual monthly enrollment of students in the CMS schools, and instead funded CMS schools with the money not dispersed to the Charter Schools. Because student enrollment for both the Charter Schools and the CMS Schools decreased during each school year, CMS's per pupil amount actually increased throughout the fiscal year. CMS's method, therefore, failed to transfer to the Charter Schools an amount "equal to" the per pupil local current expense appropriation that CMS received for the fiscal year, in violation of N.C. Gen. Stat. § 115C-238.29H(b). Accordingly, we hold the trial court correctly determined that CMS's method of calculating the local per pupil funding was inconsistent with N.C. Gen. Stat. § 115C-238.29H, and the trial court correctly ordered CMS to allocate the funds to the Charter Schools and CMS on the same basis.

## VI. STATUTE OF LIMITATIONS

[5] Finally, CMS contends the trial court erred in ruling that the Charter Schools were not barred by the statute of limitations from pursuing claims arising from funding for the 2001-02 school year. We disagree.

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[188 N.C. App. 454 (2008)]

A three-year statute of limitations applies for any action "[u]pon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it." N.C. Gen. Stat. § 1-52(2) (2001). Because N.C. Gen. Stat. § 115C-238.29H contains no limitations period, the three-year statute of limitations controls and operates as a bar to all claims accruing more than three years prior to the date the action was commenced. "In general, a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises[.]" *Thurston Motor Lines, Inc. v. General Motors Corp.*, 258 N.C. 323, 325, 128 S.E.2d 413, 415 (1962) (quotation marks and citation omitted).

CMS contends that the Charter Schools' cause of action for funding calculations and transfers for the 2001-02 school year occurred more than three years before the filing of the Charter Schools' Complaint on 25 May 2002 and, thus, is time-barred. CMS's calculation of the per pupil current local expense figure for the 2001-02 school year was made and communicated to the Charter Schools in October 2001. CMS contends that funds were then paid to the Charter Schools on a monthly basis and that "where obligations are payable in installments, the statute of limitations runs against each installment independently as it becomes due." *Martin v. Ray Lackey Enterprises, Inc.*, 100 N.C. App. 349, 357, 396 S.E.2d 327, 332 (1990).

However, contrary to CMS's contentions, CMS was not required by statute to make payments to the Charter Schools in installments, nor did CMS actually make payments to the Charter Schools in regular, monthly installments. CMS was required to transfer to the Charter Schools "an amount equal to the per pupil local current expense appropriation to [CMS] for the fiscal year." N.C. Gen. Stat. § 115C-238.29H(b). The statute does not specify a particular payment schedule that CMS was required to follow. Furthermore, CMS made payments on different days, in different months, and in varying amounts throughout the fiscal year, with "catch-up" payments made at the end of the fiscal year. Accordingly, CMS's payments to the Charter Schools were not "installment payments" and the statute of limitations did not run against each payment independently.

Additionally, given the erratic payment schedule, the Charter Schools could not have determined whether CMS had paid each of the Charter Schools "an amount equal to the per pupil local current expense appropriation to [CMS] for the fiscal year" until the end of that fiscal year. Therefore, the Charter Schools could not have determined whether CMS had underfunded the Charter Schools, or the

extent of such underfunding, until the end of the 2001-02 fiscal year. As a result, the Charter Schools' cause of action for underfunding did not accrue until after the end of the 2001-02 school year. Since their action accrued less than three years prior to the date they filed their Complaint, the trial court did not err in ruling that the Charter Schools were not barred by the applicable statute of limitations from pursuing claims arising for funding for the 2001-02 school year.

For the reasons stated, the judgment of the trial court is

REVERSED and REMANDED WITH INSTRUCTIONS in part, AFFIRMED in part.

Judges McCULLOUGH and CALABRIA concur.