SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

SUGAR CREEK CHARTER SCHOOL, INC., KENNEDY CHARTER SCHOOL, CROSS-ROADS CHARTER SCHOOL, CAROLINA INTERNATIONAL SCHOOL, AND METROLINA SCHOLARS ACADEMY, Plaintiffs-Appellees v. THE CHARLOTTE-MECKLENBURG BOARD OF EDUCATION AND PETER C. GORMAN, SUPER-INTENDENT IN HIS OFFICIAL CAPACITY, D/B/A "Charlotte-Mecklenburg Schools," Defendants-Appellants

No. COA08-516

(Filed 17 February 2009)

**1. Schools and Education— charter school funding—jurisdiction over disputes**

The superior courts maintain jurisdiction to hear monetary disputes between charter schools and their local boards of education concerning locally derived school funds despite defendants' argument that sole jurisdiction to resolve the issues resides with the North Carolina Board of Education. Reading the statutes and the North Carolina Constitution together, the powers of the State Board of Education have been limited to control, administration, and disbursement of state and federal moneys.

**2. Schools and Education— charter school funding—implied cause of action**

The General Assembly intended charter school children to have access to the same level of funding as children attending regular schools, and N.C.G.S. § 115C-238.29H(b) creates an implied cause of action in favor of plaintiff charter schools when they allege violation of the statutory provisions. These issues were properly before the court.

**3. Schools and Education— charter school funding—shared funds from board of education—textbook revenue entry**

The trial court erred when calculating the funds that a local board of education must share with charter schools by including a revenue item for textbooks supplied by the State in the local current expense fund, the source of the shared funds. The local board of education is merely the custodian of the textbooks and does not have the authority or means to convert that accounting entry to their own purposes.

**4. Schools and Education— charter school funding—local expense fund—moneys included**

The trial court did not err when calculating the funds that a local board of education must share with charter schools by in-

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

cluding in the current expense fund, from which the shared funds were drawn, moneys from a variety of sources (such as sales tax reimbursements or donations) that were held in the current expense fund rather than in separate accounts.

**5. Appeal and Error— briefs—argument—no citation of authority**

An argument of four sentences without citation to authority was deemed abandoned.

**6. Appeal and Error— briefs—argument—violation of appellate rules—argument deemed abandoned**

An argument in a charter school funding case concerning the court's refusal to consider an affidavit was deemed abandoned for violation of Appellate Rule 28(b)(6). Moreover, no prejudice was shown from the alleged error.

Appeal by Defendants from judgment entered 15 January 2008 by Judge David S. Cayer in Superior Court, Mecklenburg County. Heard in the Court of Appeals 19 November 2008.

*Robinson, Bradshaw & Hinson, P.A., by Richard A. Vinroot and Scott W. Gaylord, for Plaintiffs-Appellees.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jill R. Wilson, Robert J. King III, and Elizabeth V. LaFollette, for Defendants-Appellants.*

*Tharrington Smith, L.L.P., by Ann Majestic and Lisa Lukasik; and North Carolina School Boards Association, by General Counsel Allison B. Schafer, for North Carolina School Boards Association, amicus curiae.*

McGEE, Judge.

Plaintiffs filed this action for declaratory judgment on 17 April 2007, alleging that the Charlotte-Mecklenburg Board of Education and Peter Gorman, in his official capacity as Superintendent of the Charlotte-Mecklenburg Schools (Defendants), were violating N.C. Gen. Stat. § 115C-238.29H(b) in that Defendants were not distributing to Plaintiffs the appropriate per pupil *pro rata* share of moneys included in Defendants' local current expense fund. For more detailed facts and law concerning the general funding dispute at issue, *see Sugar Creek Charter Sch., Inc. v. Charlotte-Mecklenburg Bd. of*

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

*Educ.*, 188 N.C. App. 454, 655 S.E.2d 850 (2008), *disc. review denied*, 362 N.C. 481, 667 S.E.2d 460 (2008) (*Sugar Creek I*). Plaintiffs moved for summary judgment on 1 November 2007, and the trial court granted Plaintiffs' motion for summary judgment on 15 January 2008. The trial court ordered Defendants to pay Plaintiffs $1,295,857.00 for moneys not distributed to Plaintiffs for the fiscal years 2003-04 through 2006-07, and further ordered Defendants to distribute in the future all moneys contained in Defendants' local current expense fund pursuant to the mandate of N.C. Gen. Stat. § 115C-238.29H(b). Further relevant facts will be discussed in the body of our opinion. Defendants appeal.

I.

[1] In Defendants' first and second arguments, they contend that the trial court lacked subject matter jurisdiction to consider the issues now on appeal, and that this Court's standard of review for issues of subject matter jurisdiction is *de novo*. We agree in part.

"[Q]uestions of subject matter jurisdiction may properly be raised at any point[,]" even for the first time on appeal. *Forsyth County Bd. of Social Services v. Division of Social Services*, 317 N.C. 689, 692, 346 S.E.2d 414, 416 (1986). Our standard of review for questions of subject matter jurisdiction is *de novo*. *Ales v. T. A. Loving Co.*, 163 N.C. App. 350, 352, 593 S.E.2d 453, 455 (2004).

Defendants argue that sole jurisdiction to resolve the issues presented resides with the North Carolina Board of Education (BOE). The powers of the BOE are defined in the Constitution of the State of North Carolina, and the North Carolina General Statutes. "It is well settled that statutes dealing with the same subject matter must be construed *in pari materia*, 'as together constituting one law.' " *Williams v. Alexander County Bd. of Educ.*, 128 N.C. App. 599, 603, 495 S.E.2d 406, 408 (1998) (citation omitted).

> Statutory interpretation presents a question of law. The cardinal principle in the process is to ensure accomplishment of legislative intent. To achieve this end, the court should consider "the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish." In ascertaining the intent of the legislature, the presumption is that it acted with full knowledge of prior and existing laws.

*Id.* (citations omitted).

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

Section 5 of Article IX of the North Carolina Constitution states:

Powers and duties of Board. The State Board of Education shall supervise and administer the free public school system and the educational funds provided for its support . . . and shall make all needed rules and regulations in relation thereto, subject to laws enacted by the General Assembly.

N.C. Const. art. IX, § 5. Therefore, this constitutional grant of powers to the BOE may be limited and defined by "laws enacted by the General Assembly." *Id.* Article 2 of the North Carolina General Statutes, "State Board of Education[,]" covers the constitution, organization, powers and duties of the BOE. Article 2 of the North Carolina General Statutes, Section 115C-12, is titled: "Powers and duties of the Board generally."

The general supervision and administration of the free public school system shall be vested in the State Board of Education. The State Board of Education shall establish policy for the system of free public schools, subject to laws enacted by the General Assembly. The powers and duties of the State Board of Education are defined as follows:

(1) Financial Powers.—*The financial powers of the Board are set forth in Article 30 of this Chapter.*

. . . .

(5) Apportionment of Funds.—The Board shall have authority to apportion and equalize over the State all *State school funds and all federal funds granted to the State for assistance to educational programs administered within or sponsored by the public school system of the State.*

N.C. Gen. Stat. § 115C-12 (2007) (emphasis added). Article 2 has been amended many times, and as recently as 2007. A thorough reading of Section 115C-12 uncovers no additional grants of power to the BOE relevant to the case before us. Therefore, pursuant to Article 2, the BOE has the power to apportion *state* and *federal funds* for public school use, and the additional financial powers of the BOE are defined in Article 30.

Article 30 is entitled "Financial Powers of the State Board of Education." The only section of this article relevant to this case is Section 115C-408, "Funds under control of the State Board of Education[,]" which states in part:

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

(a) . . . The Board shall have general supervision and administration of the educational funds provided by the *State and federal governments . . . excepting* such *local funds* as may be provided by a county, city, or district.

(b) To insure a quality education for every child in North Carolina, and to assure that the necessary resources are provided, it is the policy of the State of North Carolina to provide from State revenue sources the instructional expenses for current operations of the public school system as defined in the standard course of study.

It is the policy of the State of North Carolina that *the facilities requirements for a public education system will be met by county governments.*

It is the *intent of the 1983 General Assembly to further clarify and delineate the specific financial responsibilities for the public schools to be borne by State and local governments.*

N.C. Gen. Stat. § 115C-408(a)(b) (2007) (emphasis added). The language of Section 115C-408(a) tracks the language of Section 5, Article IX of the North Carolina Constitution and removes local funding from the general supervision and administration of the Board.

Defendants argue that Article 31 of the North Carolina General Statutes should control the jurisdictional issue in this case. Article 31 is entitled "The School Budget and Fiscal Control Act." Pursuant to Section 115C-12(a) of Article 2, Article 31 does not involve the financial powers of the Board. As noted above, Article 2, though amended numerous times, does not include Article 31 as including the financial powers of the Board. Section 115C-424 of Article 31, entitled "Uniform system; conflicting laws and local acts superseded[]" states:

It is the intent of the General Assembly by enactment of this Article to prescribe for the public schools a uniform system of budgeting and fiscal control. To this end, all provisions of general laws and local acts in effect as of July 1, 1976, and in conflict with the provisions of this Article are repealed except local acts providing for the levy or for the levy and collection of school supplemental taxes. No *local act* enacted or taking effect after July 1, 1976, may be construed to modify, amend, or repeal any portion of this Article unless it expressly so provides by specific reference to the appropriate section.

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

N.C. Gen. Stat. § 115C-424 (2007) (emphasis added). Despite the absence of Article 31 in the allocation of financial powers in Article 2, Article 31 includes:

> § 115C-451. Reports to State Board of Education; failure to comply with School Budget Act.
>
> (a) The State Board of Education shall have authority to require local school administrative units to make such reports as it may deem advisable with respect to the financial operation of the public schools.
>
> (b) The State Board of Education *shall be responsible for assuring that local boards of education comply with State laws and regulations regarding the budgeting, management, and expenditure of funds.* When a local board of education willfully or negligently fails or refuses to comply with these laws and regulations, the State Board of Education shall issue a warning to the local board of education and direct it to take remedial action. In addition, the State Board *may* suspend the flexibility given to the local board under G.S. 115C-105.21A [repealed in 1991] and *may* require the local board to use funds during the term of suspension only for the purposes for which they were allotted or for other purposes with the specific approval from the State Board.
>
> (c) If the local board of education, after warning, persists in willfully or negligently failing or refusing to comply with these laws and regulations, the State Board of Education shall by resolution assume control of the financial affairs of the local board of education and shall appoint an administrator to exercise the powers assumed. The adoption of a resolution shall have the effect of divesting the local board of education of its powers as to the adoption of budgets, expenditure of money, and all other financial powers conferred upon the local board of education by law.

N.C. Gen. Stat. § 115C-451 (2007) (emphasis added). We first note that Section 115C-12(1) of Article 2 was in existence before the enactment of Article 31, and therefore through the express language of Article 31, Article 2 was superceded on the date Article 31 went into effect to the extent that Article 2 excluded Article 31 from expanding the financial powers of the BOE. However, Article 2 has been amended since the effective date of Article 31, but Section 115C-12(1) of Article 2 has not been amended to include Article 31, and Section 115C-12(5) of Article 2 has not been amended to grant the BOE

354          IN THE COURT OF APPEALS

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

authority to regulate apportionment of local funds. As noted, Article 31, Section 115C-424 includes the following language: "No local act enacted or taking effect after July 1, 1976, may be construed to modify, amend, or repeal any portion of this Article unless it expressly so provides by specific reference to the appropriate section." N.C. Gen. Stat. § 115C-424.

The language of Article 31, Section 115C-424 may have served to resolve the conflict between Article 2 as it existed 1 July 1976, though in light of the later amendments of Article 2, the continued exclusion of Article 31 from the provisions of Article 2 casts some doubt upon the current effect of Article 31. We note that the language in the above quoted section of Article 31, Section 115C-424 pertaining to acts enacted after 1 July 1976 are limited to *local acts*, not those of the General Assembly.

Assuming *arguendo* that Article 31 currently represents a legitimate grant of authority by the General Assembly, when our Court construes the provisions of Articles 2, 30, 31 and the provisions of N.C. Constitution art. IX § 5 *in pari materia*, we still find Defendants' argument unpersuasive. Article 31, Section 115C-451(b) states: "The State Board of Education shall be responsible for assuring that local boards of education *comply with State laws and regulations regarding the budgeting, management, and expenditure of funds.*" N.C. Gen. Stat. § 115C-151(b) (2007). The State laws regarding the financial powers and duties of the BOE are defined in Articles 2 and 30. Neither of these Articles grants the BOE supervisory authority over local funds, nor the power to determine disputes or provide redress for alleged misuse of local funds. Nothing in Article 31 extends the authority of the BOE beyond administration of state and federal funds.

Further, in *Appeal of Forsyth County*, 285 N.C. 64, 71, 203 S.E.2d 51, 55 (1974):

> Chief Justice Stacy stated the rule: "Where the meaning of a statute is doubtful, its title may be called in aid of construction . . . ; but the caption will not be permitted to control when the meaning of the text is clear. . . . Especially is this true where the headings of sections have been prepared by compilers and not by the Legislature itself."

*See also State ex rel. Cobey v. Simpson*, 333 N.C. 81, 90, 423 S.E.2d 759, 763-64 (1992). To the extent that the text of Section 115C-451 of

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

Article 31 is unclear, we may look to its title for guidance on the legislative intent in enacting it. In 1991, Section 115C-451 of Article 31 was amended by the General Assembly to include sections (b) and (c), involving enforcement powers of the BOE. The title of Section 115C-451 was also amended by Chapter 529, section 5 of the North Carolina Session Laws of 1991, as proposed by House Bill 493, (codified as amended at N.C. Gen. Stat. § 115C-451), from "Reports to State Board of Education[]" to "Reports to State Board of Education; *failure to comply with School Budget Act.*" (Emphasis added). This title suggests the authority granted in this section is limited to violations of the School Budget Act. Article 31 *is* the School Budget Act, and the title of Article 31 § 115C-451 indicates that the supervisory and remedial powers and duties granted therein are limited to violations of Article 31 alone, and do not abrogate powers and duties contained in other Articles of the North Carolina General Statutes.

The General Assembly has enacted laws specifically governing Charter Schools in North Carolina. Section 115C-238.29G of Article 16, entitled "Causes for nonrenewal or termination; disputes" states: "(b) The State Board of Education shall develop and implement a process to address contractual and other grievances between a charter school and its chartering entity or the local board of education during the time of its charter." N.C. Gen. Stat. § 115C-238.29G(b) (2007). This is the sole section in Article 16 concerning resolution of disputes between charter schools and their local boards of education. Section 115C-238.29G of Article 16 also states: "(c) The State Board and the charter school are encouraged to make a good-faith attempt to resolve the differences that may arise between them. They may agree to jointly select a mediator." N.C. Gen. Stat. § 115C-238.29G(c) (2007). Though Article 16 provides for the BOE to establish a process by which disputes between a charter school and a local board of education might be addressed, there is no express language limiting the resolution of such disputes to this process. In fact, this section expressly encourages resolution by a means other than this process, namely mediation. We do not interpret this section as limiting resolution of disputes between charter schools and local boards of education to the process included in Article 16, Section 115C-238.29G.

In light of our interpretation of Articles 2, 30 and 31 above, we find no grant of authority for the BOE to determine monetary disputes between charter schools and local boards of education for locally derived school funds. The powers of the BOE have been explicitly limited to control, administration, and disbursement of

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

state and federal moneys, and superior courts maintain jurisdiction to hear disputes between charter schools and their local boards of education such as those in the case before us. This holding is in keeping with prior opinions of this Court, though the specific issue of subject matter jurisdiction argued by Defendants was not raised in those opinions. *Sugar Creek I*, 188 N.C. App. 454, 655 S.E.2d 850; *Francine Delany New School for Children, Inc. v. Asheville City Bd. of Educ.*, 150 N.C. App. 338, 563 S.E.2d 92 (2002). This argument is without merit.

## II.

**[2]** In their third argument, Defendants contend that the trial court erred in ordering Defendants to share certain of its "other local revenues" with Plaintiffs. We disagree.

Defendants argue that Article 16, specifically Section 115C-238.29H and Article 30, Section 155C-426, provides Plaintiffs no private cause of action against Defendants. Neither of these statutes explicitly provides Plaintiffs with a private cause of action against Defendants, and Defendants state in their brief that "a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." *Lea v. Grier*, 156 N.C. App. 503, 508, 577 S.E.2d 411, 415 (2003) (citation omitted).

Defendants include only a partial quote from our opinion in *Lea*. The full quote in *Lea* reads: "[o]ur case law *generally* holds that a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." *Id.* (emphasis added). The *Lea* Court then went on to reaffirm established precedent that an implicit right of a cause of action exists when a statute requires action from a party, and that party has failed to comply with the statutory mandate. *Id.* at 508-09, 577 S.E.2d at 415-16 (citation omitted); *see also Williams*, 128 N.C. App. at 604, 495 S.E.2d at 409 (holding that because the language of the statutes in issue were "unambiguous, direct, imperative and mandatory" in requiring certain protections for teachers, the violation of these statutes created an implied cause of action despite the absence of express language granting any cause of action).

N.C. Gen. Stat. § 115C-238.29H(b) (2007) (emphasis added) states in relevant part:

> If a student attends a charter school, the local school administrative unit in which the child resides *shall* transfer to the charter

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

school an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year.

It is clear to this Court that the General Assembly intended that charter school children have access to the same level of funding as children attending the regular public schools of this State. The language of § 115C-238.29H(b) is "unambiguous, direct, imperative and mandatory." *See Williams,* 128 N.C. App. at 604, 495 S.E.2d at 409. We hold that § 115C-238.29H(b) creates an implied cause of action in favor of Plaintiffs when they allege violation of the mandatory provisions of this statute. When construed *in pari materia* with N.C. Gen. Stat. § 115C-408, which explicitly divests jurisdiction of the BOE concerning issues of local school funding, we hold that the issues on appeal are properly before this Court. This argument is without merit.

III.

In its fourth argument, Defendants contend that the trial court erred in calculating the amount of "local funds" that must be shared with Plaintiffs. We agree in part.

A.

Defendants are required by law to maintain at least three separate funds: (1) the State Public School Fund, (2) the local current expense fund, and (3) the capital outlay fund. N.C. Gen. Stat. § 115C-426(c) (2007); *Sugar Creek I,* 188 N.C. App. at 458, 655 S.E.2d at 853. "In addition, other funds may be required to account for trust funds, federal grants restricted as to use, and special programs. Each local school administrative unit shall maintain those funds shown in the uniform budget format that are applicable to its operations." *Id.*

Accordingly, money made available to CMS by the Board for current operating expenses shall be deposited into the local current expense fund; money made available to CMS by the Board for capital outlay shall be deposited into the capital outlay fund; and money made available to CMS by the Board for special programs shall be deposited into funds specifically established for those special programs.

*Id.* at 458, 655 S.E.2d at 854. The local current expense fund of local boards of education includes:

"moneys made available to the local school administrative unit by the board of county commissioners, supplemental taxes levied by

358 IN THE COURT OF APPEALS

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

or on behalf of the local school administrative unit pursuant to a local act or G.S. 115C-501 to 115C-511, State money disbursed directly to the local school administrative unit, and other moneys made available or accruing to the local school administrative unit for the current operating expenses of the public school system."

*Francine Delany*, 150 N.C. App. at 339, 563 S.E.2d at 93 (quoting N.C. Gen. Stat. § 115C-426(e); *see* N.C. Const. art. IX, § 7).

"If a student attends a charter school, the local school administrative unit in which the child resides shall transfer to the charter school an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year." N.C. Gen. Stat. § 115C-238.29H(b) (2001). In [*Francine Delany*], this Court held that the phrase "local current expense appropriation" in the Charter School Funding Statute, N.C. Gen. Stat. § 115C-238.29H(b), is synonymous with the phrase "local current expense fund" in the School Budget and Fiscal Control Act, N.C. Gen. Stat. § 115C-426(e). *Thus, the Charter Schools are entitled to an amount equal to the per pupil amount of all money contained in the local current expense fund.*

*Sugar Creek I*, 188 N.C. App. at 459-60, 655 S.E.2d at 854 (emphasis added).

### B.

We note that Defendants include no authority in their brief in support of several of the following arguments, which constitutes a violation of Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure, and subjects these arguments to dismissal. *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008). Applying the *Dogwood Dev.* guidelines, we choose to address most of Defendants' arguments on the merits despite this violation of our appellate rules, pursuant to the authority granted us by Rule 2 of the North Carolina Rules of Appellate Procedure.

### (1) Revenue Line for State Textbooks

[3] Defendants argue that the revenue line for state textbooks should not be included as part of its local current expense fund, which includes "State money disbursed directly to the local school administrative unit." N.C. Gen. Stat. § 115C-96 states under "Powers and duties of the State Board of Education in regard to textbooks":

IN THE COURT OF APPEALS          359

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

The children of the public elementary and secondary schools of the State shall be provided with free basic textbooks within the appropriation of the General Assembly for that purpose. To implement this directive, the State Board of Education shall evaluate annually the amount of money necessary to provide textbooks based on the actual cost and availability of text-books and shall request sufficient appropriations from the General Assembly.

The State Board of Education shall administer a fund and establish rules and regulations necessary to:

(1) Acquire by contract such basic textbooks as are or may be on the adopted list of the State of North Carolina which the Board finds necessary to meet the needs of the State public school system and to carry out the provisions of this Part.

(2) Provide a system of distribution of these textbooks and distribute the books that are provided without using any depository or warehouse facilities other than those operated by the State Board of Education.

(3) Provide for the free use, with proper care and return, of elementary and secondary basic textbooks. The title of said books shall be vested in the State.

N.C. Gen. Stat. § 115C-96 (2007). This statute provides that the BOE make a determination of the appropriate textbooks for the public schools of North Carolina, purchase these textbooks, and distribute them to the public schools. The State retains title to these textbooks. Local boards of education receive neither money to purchase these textbooks, nor any authority to obtain moneys from these textbooks "loaned" by the State. *Id.*; N.C. Gen. Stat. § 115C-100 (2007). The local boards of education are merely the custodians of the textbooks until they are returned to the State. N.C. Gen. Stat. § 115C-99 (2007). The BOE must be reimbursed annually any moneys collected by the local boards of education for damage to the textbooks. N.C.G.S. § 115C-100.

Though, for accounting purposes, the *value* of these textbooks is shown in Defendants' annual local current expense fund, Defendants do not have any authority or means to convert this "value" to their own purposes, and we hold that it does not constitute moneys contained in Defendants' local current expense fund that must be shared with Plaintiffs. The trial court erred by including the revenue line for

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

state textbooks in its order as moneys within Defendants' local current expense fund that must be shared with Plaintiffs.

### (2) Fund Balance

**[4]** Defendants argue that the fund balance constitutes moneys Defendants received in a previous fiscal year but which were not used in that fiscal year, but instead were transferred to the current year's local current expense fund, and therefore Defendants should not have to share the fund balance with Plaintiffs. Defendants object to the proposition that requiring them to share moneys with Plaintiffs that carried over from the previous year would allow Plaintiffs to "double dip," as they presumably received a per pupil share of this money in the prior fiscal year. However, Defendants' argument is double-edged. If Defendants do not share the fund balance with Plaintiffs, then Defendants' students will receive more per pupil funds in the current fiscal year than Plaintiffs' students. As Defendants point out, N.C. Gen. Stat. § 115C-238.29H(b) mandates that Defendants transfer to Plaintiffs "an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year." As the fund balance is carried over from the previous fiscal year to the current fiscal year, it constitutes moneys in Defendants' local current expense fund. By the mandate of N.C. Gen. Stat. § 115C-238.29H(b), it must be shared with Plaintiffs. *See also Sugar Creek I*, 188 N.C. App. at 458, 655 S.E.2d at 854. Otherwise Defendants' students would be receiving a higher per pupil share of the local current expense fund for the current fiscal year than Plaintiffs' students. We hold the trial court did not err in including the fund balance in its calculation of its award.

### (3) Hurricane Katrina Relief Funds

Defendants argue that they should not have to share moneys granted by the federal government to cover the cost of educating students displaced by Hurricane Katrina who entered the Charlotte-Mecklenburg School System. In their brief, Defendants contend the funds were to "help reimburse [Defendants] for [their] costs in schooling these children." However, in their brief, Defendants do not direct this Court to any evidence indicating how these funds were spent. Defendants do not state in their brief whether the Katrina funds were simply added, without restriction, to the local current expense fund and distributed equally among all students, including those displaced by Hurricane Katrina, or whether these funds were restricted for the sole benefit of Hurricane Katrina students.

IN THE COURT OF APPEALS          361

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

If the former, then we find no inequity in treating these funds like any other funds used to support the general public school student population. If the latter, then a potential equitable argument arises concerning the sharing of these funds with Plaintiffs. However, Defendants provide no guidance on this matter, and we treat the Hurricane Katrina funds as any other funding. Furthermore, because these funds were deposited in the local current expense fund, the trial court did not err in ordering them shared with Plaintiffs. *Sugar Creek I*, 188 N.C. App. at 458, 655 S.E.2d at 854. We further note that "other funds may be required to account for trust funds, *federal grants restricted as to use*, and special programs. Each local school administrative unit shall maintain those funds shown in the uniform budget format that are applicable to its operations." *Id.* at 458, 655 S.E.2d at 853 (emphasis added). If the federal Hurricane Katrina funds were restricted, then they should have been placed in a separate fund, not the current local expense fund.

### (4) *Sales Tax Reimbursement*

Defendants pay sales tax on certain transactions, and they may apply for reimbursement of certain taxes paid. N.C. Gen. Stat. § 105-164.14 (2007). Defendants argue that they should not have to share these tax reimbursements with Plaintiffs. However, these tax reimbursements are deposited in Defendants' local current expense fund, and Defendants make no argument that these tax reimbursements are used any differently than other moneys in that fund. We hold the trial court did not err by including these moneys in its calculation. *Sugar Creek I*, 188 N.C. App. at 458, 655 S.E.2d at 854.

### (5) *Preschool Programs and Facilities*

Defendants argue that moneys in their local current expense fund used for preschool students should not be shared with Plaintiffs because Plaintiffs do not have preschool programs. Defendants' argument was previously decided against them in our *Sugar Creek I* opinion. *Sugar Creek I*, 188 N.C. App. at 458-59, 655 S.E.2d at 854-55.

### (6) *Donations for other Specific Programs*

Defendants argue that donations from individuals and organizations for "specific special programs and schools" should not be shared with Plaintiffs. Again, this issue was addressed in *Sugar Creek I*. If donations or other moneys are intended for special programs, they should be held in a special fund. Because Defendants have held

362 IN THE COURT OF APPEALS

SUGAR CREEK CHARTER SCHOOL, INC. v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[195 N.C. App. 348 (2009)]

these moneys in their local current expense fund, they are required to share these moneys with Plaintiffs. *Id.* at 459, 655 S.E.2d at 855.

### (7) Reimbursements from Capital Funds

**[5]** We decline to address this argument because not only do Defendants fail to cite any authority in support of their argument, Defendants' argument consists of four sentences which offer this Court no guidance on the substance of the argument or any significant basis therefore. This argument is deemed abandoned. N.C.R. App. P. 28(b)(6); *Dogwood*, 362 N.C. at 200, 657 S.E.2d at 367.

### IV.

**[6]** In Defendants' fifth argument, they contend that the trial court erred in refusing to consider an affidavit of Dennis Covington (Covington). In their argument, Defendants fail to inform this Court as to the identity of Covington. From Plaintiffs' brief, we learn that Covington is Defendants' Chief Financial Officer. The entirety of Defendants' argument concerning this issue, excluding its recitation of the standard of review, is as follows:

> As prior counsel for [Defendants] explained to the trial court throughout the summary judgment process, [Plaintiffs'] proposed damages were incorrect and included categories of money that [Defendants] should not be required to share with [Plaintiffs]. [Defendants] offered the Affidavit of Dennis Covington to more fully elaborate upon [sic.] nature of these objections, but the [c]ourt refused to consider the affidavit. The [c]ourt's decision was arbitrary and the affidavit should have been considered.

This argument has been abandoned for violation of Rule 28(b)(6) of our Appellate Rules. Assuming *arguendo* Defendants have not abandoned this argument, we hold they fail in their burden to show that the trial court's " 'decision was manifestly unsupported by reason, or "that it was so arbitrary that it could not have been the result of a reasoned decision." ' " *HIS N.C., LLC v. Diversified Fire Prot. of Wilmington, Inc.*, 169 N.C. App. 767, 774, 611 S.E.2d 224, 228 (2005) (citations omitted). This argument is without merit.

We reverse the trial court's award insofar as it requires Defendants to share moneys with Plaintiffs related to the textbooks Defendants receive from the BOE and remand for further action consistent with this holding. We affirm the judgment of the trial court in every other respect.

Affirmed in part, reversed and remanded in part.

Judges BRYANT and GEER concur.