THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011

THOMAS JEFFERSON CLASSICAL ACADEMY, d/b/a THOMAS JEFFERSON CLASSICAL
ACADEMY CHARTER SCHOOL, Plaintiff v. THE RUTHERFORD COUNTY
BOARD OF EDUCATION, d/b/a RUTHERFORD COUNTY SCHOOLS, Defendant

No. COA10-1121

(Filed 20 September 2011)

**1. Schools and Education—charter school funding—funds placed in local expense fund—per pupil amount**

The trial court did not err in a charter school funding case by including restricted monies that defendant Rutherford County Schools received from the state and federal governments in calculating the funds that it must share with plaintiff charter school. As the funds were placed in the "local current expense fund" and not in a "special fund," they must be considered when calculating the per pupil amount due the charter schools. Furthermore, while the inclusion of "restricted funds" in the "local current expense fund" resulted in a larger per pupil appropriation to the charter school, the statute does not direct that the "restricted funds" be shared with the charter schools and does not violate provisions of the United States Constitution.

**2. Schools and Education—charter school funding—court's authority—construe acts of the General Assembly**

Defendant Rutherford County Schools' argument in a charter school funding case that the courts are without authority to direct that "restricted" state funds be shared with the charter school was overruled. Under our State Constitution, the role of the courts is to construe acts of the General Assembly and had the General Assembly believed that the Court of Appeals had misinterpreted its intent with respect to the method of computation of amounts due to a charter school under N.C.G.S. § 115C-238.29H(b), it had ample opportunity to amend the statute to reflect a different intent.

**3. Schools and Education—charter school funding—restricted funds—per pupil allotment**

Defendant Rutherford County Schools' argument in a charter school funding case that by including "restricted funds" in the computation of per pupil allotments, charter school students are receiving a higher level of funding than those in the regular public schools was overruled as the Court was bound by the deci-

THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011)]

sions in *Delany*, 150 N.C. App. 338, *Sugar Creek I*, 188 N.C. App. 454, and *Sugar Creek II*, 195 N.C. App. 348.

**4. Schools and Education—charter school funding—retroactive budget amendment—no legal effect**

The trial court correctly held in a charter schools funding case that defendant Rutherford County Schools' purported amendment to its 2008-09 budget was "without legal effect" as the funds had already been spent. Further, the fact that prior to November 2009, local school administrative units were permitted to segregate restricted and non-restricted funds within the confines of the "local current expense fund" did not permit the purported retroactive amendment.

**5. Schools and Education—charter school funding—budget amendment valid**

The trial court did not err in a charter schools funding case by concluding that defendant Rutherford County Schools' amendment to its 2009-10 budget was valid. The provisions of N.C.G.S. § 115C-433(d) were inapplicable to the case, the provisions of Chapter 115C did not require that all monies provided to the local administrative unit be placed into the "local current expense fund," and there was no requirement that the entities that were the source of those funds required defendant Rutherford County Schools to account for the monies in a separate fund.

Appeals by plaintiff and defendant from order of summary judgment entered 9 July 2010 by Judge A. Robinson Hassell in Rutherford County Superior Court. Heard in the Court of Appeals 9 February 2011.

*Robinson Bradshaw & Hinson, P.A., by Richard A. Vinroot, and A. Ward McKeithen, for plaintiff.*

*Campbell Shatley, PLLC, by Christopher Z. Campbell and Chad R. Donnahoo, for defendant.*

*Allison B. Schafer, Kathleen C. Boyd, and Katherine J. Brooks, for North Carolina School Boards Association, amicus curiae.*

STEELMAN, Judge.

Funds restricted as to their use, but placed into a school board's "local current expense fund" must be considered in the computa-

tion of monies due to a charter school pursuant to N.C. Gen. Stat. § 115C-238.29H(b) (2009). The trial court correctly determined that a purported amendment to the 2008-09 budget of the county schools, adopted over five months after the end of the fiscal year and after the funds had been expended, was of no legal effect. Under our prior holdings in *Sugar Creek I* and *II,* the county schools can place restricted funds in accounts other than the "local current expense fund."

## I.  Factual and Procedural History

In 1995, the General Assembly provided for the creation of charter schools, defined as "deregulated schools under public control." Charter Schools Act of 1996, ch. 731, House Bill 955, 1995 N.C. Sess. Laws. The General Assembly required that the local school administrative unit in which each charter school student resides "transfer to the charter school an amount equal to the per pupil local current expense appropriation to the local school administrative unit . . . ." N.C. Gen. Stat. § 115C-238.29H(b).

Plaintiff, Thomas Jefferson Classical Academy (TJCA), is a charter school. On 15 January 2010, TJCA filed a complaint against the Rutherford County Board of Education (RCS) in the Superior Court of Rutherford County. TJCA's amended complaint (filed 26 March 2010) asserted two claims: (1) for a declaratory judgment that RCS must apportion monies to TJCA in accordance with the applicable state statutes and the prior decisions of the North Carolina Court of Appeals; and (2) that TJCA recover from RCS the amount which it underfunded TJCA from 2006-2010 in at least the amount of $903,707. On 28 April 2010, RCS filed an answer and counterclaims seeking: (1) a declaration that TJCA was not entitled to share in revenues restricted to specific purposes by state or federal law or to provide voluntary services to populations outside of its obligation to provide basic education; (2) a declaration that it was entitled to amend its budget resolutions for the 2009 and 2010 fiscal years; and (3) for appointment of a referee to provide an accounting of the number of students involved and the applicable revenues involved in the controversy. On 4 June 2010, both TJCA and RCS moved for summary judgment pursuant to North Carolina Rule of Civil Procedure 56.

On 9 July 2010, the trial court entered judgment holding that there were no genuine issues of material fact, and entering judgment as a matter of law resolving all of TJCA's claims and RCS' counterclaims. The trial court ruled that: (1) RCS' budget amendment for the 2008-09 fiscal year was "without legal effect;" (2) that RCS underfunded TJCA

THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011

during the fiscal years 2006-07, 2007-08, and 2008-09 in the amount of $730,889 and ordered that sum to be paid by RCS to TJCA, without interest; (3) RCS' budget amendment for the fiscal year 2009-10 was upheld, so that certain monies were not to be included in the computation of sums due to TJCA for the 2009-10 fiscal year; (4) that RCS must comply with the Funding and Budget Statutes in determining monies to be included in its "local current expense fund" for the fiscal year 2009-10, and in the future; and (5) each party was to bear its own costs, including attorney's fees.

TJCA appeals the portions of the judgment upholding the budget amendment for the 2009-10 fiscal year and holding that certain monies were not to be included in the computations. RCS appeals the portions of the judgment declaring its 2008-09 budget amendment to be invalid and holding that certain restricted revenues should be included in the computation.

## II.  Standard of Review

Neither party asserts that there are genuine issues of material fact in this case. As such, our review is limited to the correctness of the trial court's legal determinations. *See Showalter v. N.C. Dep't. of Crime Control & Pub. Safety*, 183 N.C. App. 132, 134, 643 S.E.2d 649, 651 (2007). This review is *de novo*. *Id*.

The basis of both appeals is a question of statutory interpretation. "Questions of statutory interpretation are questions of law," which we review *de novo*. *State v. Largent*, 197 N.C. App. 614, 617, 677 S.E.2d 514, 517 (2009) (quoting *In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 559-60, 589 S.E.2d 179, 180-81 (2003)). We are to give the statute the effect intended by the legislature. *Id*. "Where the language of a statute is clear and unambiguous there is no room for judicial construction and the courts must give it its plain and definite meaning . . . ." *Begley v. Employment Security Comm.*, 50 N.C. App. 432, 436, 274 S.E.2d 370, 373 (1981). However, "when the meaning of a statute is unclear, '[t]he spirit and intent of an act controls its interpretation.' " *Wake Cares, Inc. v. Wake Cty. Bd. of Educ.*, 363 N.C. 165, 180, 675 S.E.2d 345, 355 (2009) (Martin, J., dissenting) (alteration in original) (quoting *Lithium Corp. of Am. v. Town of Bessemer City*, 261 N.C. 532, 536, 135 S.E.2d 574, 577 (1964)).

## III.  Statutory and Case Law Background

This case continues the series of cases brought before this Court in which a local charter school disputes the amount of funding allo-

cated to it by the local school board pursuant to N.C. Gen. Stat. § 115C-238.29H.

## A.  Charter School Funding

Chapter 731 of the North Carolina General Assembly 1995 Session Laws authorized the creation and funding of charter schools as "deregulated schools under public control." Subsection (a) of N.C. Gen. Stat. § 115C-238.29H sets forth the funding to be provided to each charter school by the State Board of Education. Subsection (b) of N.C. Gen. Stat. § 115C-238.29H sets forth the funding to be provided to each charter school by the local school administrative unit, stating "[i]f a student attends a charter school, the local school administrative unit in which the child resides shall transfer to the charter school an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year. . . ."

In *Francine Delany New School for Children, Inc. v. Asheville City Bd. of Educ.*, 150 N.C. App. 338, 346, 563 S.E.2d 92, 97 (2002), *disc. review denied*, 356 N.C. 670, 577 S.E.2d 117 (2003), this Court held that there is no material distinction between the term "local current expense appropriation" as found in N.C. Gen. Stat. § 115C-238.29H, and the term "local current expense fund" as found in N.C. Gen. Stat. § 115C-426(e). The statute defines this fund as follows:

> (e) The local current expense fund shall include appropriations sufficient, when added to appropriations from the State Public School Fund, for the current operating expense of the public school system in conformity with the educational goals and policies of the State and the local board of education, within the financial resources and consistent with the fiscal policies of the board of county commissioners. These appropriations shall be funded by revenues accruing to the local school administrative unit by virtue of Article IX, Sec. 7 of the Constitution, moneys made available to the local school administrative unit by the board of county commissioners, supplemental taxes levied by or on behalf of the local school administrative unit pursuant to a local act or G.S. 115C-501 to 115C-511, State money disbursed directly to the local school administrative unit, and other moneys made available or accruing to the local school administrative unit for the current operating expenses of the public school system.

N.C. Gen. Stat. § 115C-426(e) (2009).

THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011

Under the provisions of N.C. Gen. Stat. § 115C-426, local school administrative units are required to operate under a uniform budget format. Subsection (c) of that statute mandates the following:

The uniform budget format shall require the following funds:

(1) The State Public School Fund.

(2) The local current expense fund.

(3) The capital outlay fund.

In addition, other funds may be required to account for trust funds, federal grants restricted as to use, and special programs. Each local school administrative unit shall maintain those funds shown in the uniform budget format that are applicable to its operations.[1]

The 2008 case of *Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 188 N.C. App. 454, 655 S.E.2d 850 (*Sugar Creek I*), *disc. review denied*, 362 N.C. 481, 665 S.E.2d 738 (2008), dealt with whether funds deposited in the "local current expense fund" given to the local school administrative unit for "Bright Beginnings," a special program for "at-risk," "pre-kindergarten" children, and for a High School Challenge Grant should be included as part of the "local current expense fund" for purposes of computing the per pupil amount due to the charter school. This Court held that even assuming that "Bright Beginnings" was a "special program" under N.C. Gen. Stat. § 115C-426(c), the local school administrative unit failed to place it in a special fund. Since it was placed in the "local current expense fund," and the charter school was entitled to a

---

1. Session law 2010-31, Senate Bill 897, Section 7.17(a) amended the second portion of N.C. Gen. Stat. § 115C-426(c) to read as follows:

> In addition, other funds may be used to account for reimbursements, including indirect costs, fees for actual costs, tuition, sales tax revenues distributed using the ad valorem method pursuant to G.S. 105-472(b)(2), sales tax refunds, gifts and grants restricted as to use, trust funds, federal appropriations made directly to local school administrative units, funds received for prekindergarten programs, and special programs. In addition, the appropriation or use of fund balance or interest income by a local school administrative unit shall not be construed as a local current expense appropriation.

> Each local school administrative unit shall maintain those funds shown in the uniform budget format that are applicable to its operations.

This amendment is applicable "beginning with the 2010-2011 school year." It is thus inapplicable to any of the school fiscal years at issue in this case.

THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011

*pro rata* share of that fund, "[Charlotte-Mecklenburg Board of Education and the Charlotte-Mecklenburg County Superintendent of Schools (CMS) were] required to apportion this money on a per pupil basis between CMS and the Charter Schools . . . ." *Id.* at 461, 655 S.E.2d at 855.

In ruling on the "Bright Beginnings" funds, this Court expressly rejected the argument of the charter school that "all moneys made available to CMS by the Board are part of the current local expense fund, and thus must be apportioned *pro rata* between the CMS schools and the Charter Schools . . . ." *Id.*

As to the High School Challenge funds, this Court held that it was not a special program, and that the trial court correctly allocated a portion of those funds to the charter schools. *Id.* at 463, 655 S.E.2d 856.

Finally, in the case of *Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 195 N.C. App. 348, 673 S.E.2d 667 *(Sugar Creek II)*, *appeal dismissed and disc. review denied*, 363 N.C. 663, 687 S.E.2d 296 (2009), this Court made a number of specific rulings with respect to monies held in the local school administrative unit's "local current expense fund." The rulings relevant to the issues presented in the instant case are as follows:

(1) *Fund Balance.* Funds carried over from a previous year into the current year's "local current expense fund" constitute monies in the fund and are to be considered in the calculation of amounts due to the charter schools. *Id.* at 360, 673 S.E.2d at 675.

(2) *Hurricane Katrina Relief Funds.* Funds received from the federal government to cover the cost of educating students displaced by Hurricane Katrina and placed in the "local current expense fund" are required to be included in the amount used to calculate the amount owed the charter schools. *Id.* at 361, 673 S.E.2d at 676.

(3) *Sales Tax Reimbursement.* Where reimbursements were deposited in the "local current expense fund," they were required to be included in the calculation of amounts due to the charter schools. *Id.*

(4) *Preschool Programs.* In accordance with *Sugar Creek I*, these monies in the "local current expense fund" are required to be included in the total used to calculate the amount owed the charter schools. *Id.*

(5) *Donations for other Specific Programs.* Donations from individuals and organizations for "specific special programs and

THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011

schools," if not held in a special fund, and placed in the "local current expense fund" are required to be included in the calculation of amounts due to the charter schools. *Id.*

The common thread running through each of these holdings is that if funds are placed in the "local current expense fund" and not held in a "special fund," they must be considered as being part of the "local current expense fund" used to determine the *pro rata* share due to the charter schools.

On 16 December 2009, Phillip Price, Associate Superintendent for Financial and Business Services for the North Carolina Department of Public Instruction, issued a memorandum to school finance officers as follows:

Establishment of Other Restricted Funds—Fund 8:

Representatives from DPI and the Local Government Commission met last week to discuss the establishment of a fund into which local school systems may deposit monies designated for restricted purposes. This new fund, Fund 8, will allow LEAs to separately maintain funds that are restricted in purpose and not intended for the general K-12 population in the LEA. These are funds that may legitimately be kept separate from the local current expense fund.

Examples of funds that may be placed in Fund 8 are:

(a) State funds that are provided for a targeted non-K-12 constituency such as More-at-Four funds;

(b) Funds targeted for a specific, limited purpose, such as a trust fund for a specific school within the LEA;

(c) Federal or other funds not intended for the general K-12 instructional population, or a sub-group within that population, such as funds for a pilot program;

(d) Indirect cost, such as those associated with a federal grant that represent reimbursement for cost previously incurred by the LEA.

The decision of which funds may legitimately be placed in Fund 8 remains a local decision, to be made after consulting with the LEA attorney if necessary. The LGC will be providing more guidance on the establishment of this Fund 8 and the Consolidated Annual Financial Reports.

### IV.  Restricted Funds Placed into the "Local Current Expense Fund"

**[1]** In its first argument as appellant, RCS contends that the trial court erred in including restricted monies that it received from the state and federal governments in calculating the funds that it must share with TJCA. We disagree.

### A.  Whether Funds Designated for Specific Programs Placed into "Local Current Expense Fund" are Considered in Calculation of Sums Due to Charter Schools

RCS argues that funds appropriated for specific programs or purposes by the federal and state governments cannot be shared with a charter school. It particularly focuses upon monies for pre-kindergarten programs, and contends that the question of whether funds specifically designated for a particular purpose or program can be shared with the charter schools is an issue of first impression for our courts.

We hold that this question is not one of first impression for our courts. This very question has been thoroughly discussed and analyzed in *Sugar Creek I* and *II*. *Sugar Creek I* held that funds specifically appropriated for "Bright Beginnings" a program for "at-risk," "pre-kindergarten" children placed into the "local current expense fund" had to be considered in determining the amount due to the charter schools. 188 N.C. App. 454, 655 S.E.2d 850. Similarly, the Hurricane Katrina Relief Funds, Preschool Programs, and Donations for other Specific Programs at issue in *Sugar Creek II* were required to be considered part of the "local current expense fund" when calculating the amount due the charter school, if they were placed in that fund. 195 N.C. App. 348, 673 S.E.2d 677. As was noted in section III of this opinion, if the funds are placed in the "local current expense fund" and not in a "special fund," they must be considered when calculating the per pupil amount due the charter schools. We are bound by prior decisions of this Court on the same issue, even though it is in a different case, under the rationale of *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36-7 (1989).

### B.  Alleged Violation of Supremacy Clause and Conflict Preemption

RCS next argues that to order funds restricted as to their use by the United States Congress to be shared with a charter school is a violation of the Supremacy Clause of the United States Constitution

THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011

(Article VI, Section 2, The laws of the United States shall be the supreme law of the land.).

.   As noted above N.C. Gen. Stat. § 115C-238.29H(b) required that the local school administrative unit pay to the charter school "an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year." Under the rationale of *Delany*, the statute provides the method for computation of the amount of per pupil funds that must be paid to the charter school. It does not require that the local school administrative unit "share" a portion of either federal, state, or local "restricted funds" with the charter school. While we acknowledge that the inclusion of "restricted funds" in the "local current expense fund" will result in a larger per pupil appropriation to the charter school, because the statute does not direct that the "restricted funds" be shared with the charter schools, it does not violate provisions of the United States Constitution as alleged by RCS.

We further note, as has been explicitly held in *Sugar Creek I* and *II*, that when "restricted funds" are placed in the "local current expense fund" and not in a separate account, they must be included in the computation of the amount due to the charter school.

### C. Role of the Courts in Construing Acts of General Assembly

[2] RCS next argues that the judiciary has no role in the administration of public funds that the General Assembly has allocated for a specific purpose. It contends that the courts are without authority to direct that "restricted" state funds be shared with the charter school.

We first of all note that under our State Constitution it is the role of the courts to construe acts of the General Assembly. Article IV, Section 1 of the North Carolina Constitution; *see Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 460, 665 S.E.2d 449, 451 (2008); *State v. Jones*, 358 N.C. 473, 477, 598 S.E.2d 125, 128 (2004). Commencing in 2002 with the *Delany* decision, and continuing in 2008 and 2009 with the *Sugar Creek I* and *II* cases, this Court has consistently construed the provisions of section 115C-238.29H(b) to require that the amount of all monies placed in the "local current expense fund" for the local school administrative unit must be considered in calculating the per pupil amount due to a charter school. *Delany*, 150 N.C. App. 338, 563 S.E.2d 92; *Sugar Creek I*, 188 N.C. App. 454, 655 S.E.2d 850; *Sugar Creek II*, 195 N.C. App. 348, 673 S.E.2d 667. As noted in Section IV, B, above, inclusion of these funds in the computation does not constitute a directive that "restricted funds" be "shared" with the charter school.

It has been over eight years since *Delany* was decided. Had the General Assembly believed that this Court had misinterpreted its intent with respect to the method of computation of amounts due to a charter school under N.C. Gen. Stat. § 115C-238.29H(b), it certainly has had ample opportunity to amend the statute to reflect a different intent. *Jones*, 358 N.C. at 476, 598 S.E.2d at 127 ("If the General Assembly had not intended such an interpretation . . . to continue, it could have amended the statute to end this long-standing practice.").

### D. Following Prior Decisions of this Court

**[3]** RCS argues that *Sugar Creek II* held that "the General Assembly intended that charter school children have access to the same level of funding as children attending the regular public schools of this State." *Sugar Creek II*, 195 N.C. App. at 357, 673 S.E.2d at 673. RCS contends that by including "restricted funds" in the computation, charter school students are receiving a higher level of funding than those in the regular public schools.

As has been noted above, the trial court's order correctly reflected the prior holdings of this Court in *Delany* and *Sugar Creek I* and *II*. The trial court was bound by those decisions. *Reid v. Town of Madison*, 145 N.C. App. 146, 151, 550 S.E.2d 826, 829 (2001), *disc. review improvidently allowed*, 355 N.C. 276, 559 S.E.2d 786 (2002). This Court is bound by those decisions. *In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37.

These arguments are without merit.

### V. Purported Amendment of the 2008-09 Budget

**[4]** RCS' 2008-09 budget year ran from 1 July 2008 through 30 June 2009. On 8 December 2009, RCS purported to amend its 2008-09 budget to create a new Fund Seven and to transfer funds from Fund Two ("local current expense fund"). This purported amendment did not actually transfer any funds, since the funds for the 2008-09 school year had already been expended. The purported budget amendment did not affect the audit of the 2008-09 budget year.

RCS argues that under the provisions of N.C. Gen. Stat. § 115C-433(a) (2009), it had the authority to amend its 2008-09 budget:

(a) Subject to the provisions of subsection (b) of this section, the board of education may amend the budget resolution at any time after its adoption, in any manner, so long as the resolution as amended continues to satisfy the requirements of G.S. 115C-425 and 115C-432.

THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011]

RCS further argues that "[p]rior to November 2009, the Board had no reason to create a special fund solely for its restricted federal and state revenue."[2]

It is clear from the record that the only purpose of the purported retroactive amendment to the 2008-09 budget shifting funds out of Fund Two ("local current expense fund") and into Fund Seven was to avoid the holdings of this Court in *Delany* and *Sugar Creek I* and *II*. Since the funds were already spent, the trial court correctly held that the purported amendment to the 2008-09 budget was "without legal effect."

RCS further argues that prior to November 2009, local school administrative units were permitted to segregate restricted and non-restricted funds within the confines of Fund Two, and that this should permit the purported retroactive amendment, allowing their accounting to conform to their prior practice. We hold that this argument is without merit for two reasons. First, the date of the denial of defendants' appeal and petition for discretionary review in *Sugar Creek II* is without legal significance in the context of this argument. The Court of Appeals decision in *Sugar Creek II* was unanimous, and it was not stayed pending the appeal and petition to the Supreme Court. Second, *Sugar Creek II* was decided by the Court of Appeals in February 2009, and was the law in North Carolina long before November 2009. Further, the holdings in *Sugar Creek II* were consistent with the prior decisions in *Delany* and *Sugar Creek I*.

This argument is without merit.

## VI.  Amendment of the 2009-10 Budget

[5]  In its first argument on appeal, TJCA contends that RCS' amendment to its 2009-10 budget was invalid. We disagree.

On 12 January 2010, RCS amended its 2009-10 budget to transfer over five million dollars from Fund Two ("local current expense fund") into Funds Seven (Reserved for LEA or charter school local use) and Eight (Reserved for future state use). The intent of this amendment was to leave only county appropriations and fines and forfeitures in Fund Two. TJCA argues that amendments to RCS' budget under N.C. Gen. Stat. § 115C-433(a) must comply with N.C. Gen. Stat. § 115C-425 and N.C. Gen. Stat. § 115C-432. These statutes man-

---

2.  The November 2009 date appears to reference the order of the North Carolina Supreme Court of 5 November 2009 that dismissed defendants' appeal based upon a substantial constitutional question and denied defendants' petition for discretionary review in *Sugar Creek II*.  363 N.C. 663, 687 S.E.2d 296.

THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011]

date compliance with the uniform budget format set forth in N.C. Gen. Stat. § 115C-426.

TJCA first argues that under N.C. Gen. Stat. § 115C-433 RCS can transfer money from "one 'fund' to another only in limited 'emergency' circumstances." In support of this proposition, TJCA cites N.C. Gen. Stat. § 115C-433(d) which provides that the "transfer of money" to or from the capital outlay fund to or from any other fund requires approval of the board of county commissioners to meet unforeseen emergencies. The transfer of funds in the instant case did not involve the transfer of funds to or from the capital outlay fund. The provisions of N.C. Gen. Stat. § 115C-433(d) are inapplicable to this case.

TJCA next argues that N.C. Gen. Stat. § 115C-426 requires that the funds that were the subject of the January 2010 budget amendment were required to remain in the "local current expense fund." It contends that under the provisions of section 115C-426(e) all monies provided to the local administrative unit must be placed into the "local current expense fund" (Fund Two). This is essentially the same argument that was made by the charter schools in *Sugar Creek I*, and rejected by this Court:

> The Charter Schools further argue that the fact the uniform budget format mandates an "independent fiscal and accounting entity" for a special program does not address the need to apportion the revenues diverted to that fund where, as here, those revenues originally are part of the moneys "made available" to CMS by the Board. In essence, the Charter Schools contend that all moneys made available to CMS by the Board are part of the current local expense fund, and thus must be apportioned *pro rata* between the CMS schools and the Charter Schools before any of those moneys are diverted to other funds. This is inaccurate.

> . . . .

> Thus, contrary to the Charter Schools' contention, not *all* appropriations from the Board to CMS are included in the current local expense fund and thus subject to apportionment under N.C. Gen. Stat. § 115C-238.29H(b). Since the Charter Schools are only entitled to a *pro rata* share of all money in the local current expense fund, the Charter Schools are therefore entitled to a *pro rata* share of the money made available to CMS by the County Commissioners specifically for the current local expense fund.

THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011

*Sugar Creek I*, 188 N.C. App. at 461-62, 655 S.E.2d at 855-56 (emphasis in original).

The January 2010 budget amendment was adopted following receipt of the 16 December 2009 memorandum from the North Carolina Department of Public Instruction. This memorandum, as set forth in Section III of this opinion, specifically authorized the creation of Fund Eight for the purpose of separately maintaining "restricted funds." The January 2010 budget amendment placed all restricted funds into Fund Eight with the exception of Head Start funds. The Head Start monies were placed into Fund Seven because "[Head Start] has a separate Board of Directors and audit requirements necessitate tracking the revenues and expenditures as a 'component unit.' "

We hold that the provisions of Chapter 115C as construed by *Sugar Creek I* and *II* do not require that all monies provided to the local administrative unit be placed into the "local current expense fund" (Fund Two).

TJCA next argues that RCS cannot create separate funds unless the entities that are the source of those funds require RCS to account for the monies in a separate fund. N.C. Gen. Stat. § 115C-426 sets forth the three basic funds that are required under the uniform budget format. "In addition, other funds may be required to account for trust funds, federal grants restricted as to use, and special programs." N.C. Gen. Stat. § 115C-426(c). TJCA argues that this language means that other funds cannot be created unless the donor of the funds requires that the funds be held in a separate and different fund, and cites to *Sugar Creek I* and *II* in support of this proposition. The record before us does not reveal any separate and distinct requirement of a separate fund or account by the donor for the monies transferred from Fund Two to Funds Seven and Eight by virtue of the January 2010 budget amendment.

We have reviewed the prior decisions of this Court in *Delany* and *Sugar Creek I* and *II*; particularly the specific portions of the opinions cited by TJCA, and find that they do not support the proposition that there must be a specific requirement of a donor before a separate fund can be created by a local school administrative unit.

In *Sugar Creek I*, we held that with respect to funding for the Bright Beginnings programs:

THOMAS JEFFERSON CLASSICAL ACAD. v. RUTHERFORD CNTY. BD. OF EDUC.

[215 N.C. App. 530 (2011)]

Assuming *arguendo*, that Bright Beginnings was a special program, the Board would have been within its statutory authority to allocate money for the program, separate and apart from money allocated for current operating expenses, capital outlay expenses, or other special programs. However, instead of allocating money to a Bright Beginnings special program fund, the County Commissioners allocated the money for Bright Beginnings to the local current expense fund, earmarked for Bright Beginnings. Furthermore, CMS was required to set up and maintain a separate special fund for the Bright Beginnings program, pursuant to N.C. Gen. Stat. § 115C-426(c); this they failed to do. As a result, the Bright Beginnings money was requested for the local current expense fund, allocated to the local current expense fund, deposited into the local current expense fund, and deducted from the local current expense fund. Because the Charter Schools were entitled to a *pro rata* share of all the money in the local current expense fund, CMS was required to apportion this money on a per pupil basis between CMS and the Charter Schools before the Bright Beginnings program was funded.

*Sugar Creek I*, 188 N.C. App. at 460-61, 655 S.E.2d at 855.

In *Sugar Creek II*, a similar discussion took place with respect to Hurricane Katrina Relief Funds:

[B]ecause these funds were deposited in the local current expense fund, the trial court did not err in ordering them shared with Plaintiffs. *Sugar Creek I*, 188 N.C. App. at 458, 655·S.E.2d at 854. We further note that "other funds may be required to account for trust funds, *federal grants restricted as to use*, and special programs. Each local school administrative unit shall maintain those funds shown in the uniform budget format that are applicable to its operations." *Id*. at 458, 655 S.E.2d at 853 (emphasis added). If the federal Hurricane Katrina funds were restricted, then they should have been placed in a separate fund, not the current local expense fund.

*Sugar Creek II*, 195 N.C. App. at 361, 673 S.E.2d at 676.

Nowhere in these two passages is the legal principle enunciated that "restricted funds" cannot be placed in a fund separate from the "local current expense fund" without the specific direction from the donor of the funds. Rather, *Sugar Creek I* and *II* clearly indicate that it is incumbent upon the local administrative unit to place restricted

funds into a separate fund. If the funds are left in the "local current expense fund," then they are to be considered in computing the per pupil amount to be allocated to the charter school.

RCS had the authority to amend its 2009-10 budget to transfer restricted funds from Fund Two to Funds Seven and Eight.

This argument is without merit.

## VII.  Inclusion of Monies Transferred to Funds Seven and Eight in Computation of Monies Due to TJCA

In its second argument, TJCA contends that since RCS lacked authority to transfer monies from Fund Two to Funds Seven and Eight under its January 2010 budget amendment, those funds must be included in the calculation of monies due to TJCA for the 2009-10 fiscal year. For the reasons set forth in Section VI of this opinion, we hold that this argument is without merit.

## VIII.  Conclusion

Under our prior holdings in *Delany* and *Sugar Creek I* and *II*, funds placed into the "local current expense fund" must be considered in computing the amounts due to a charter school. During the current fiscal year, a local administrative unit may amend its budget to place restricted funds into special funds. However, it may not retroactively amend the budget of a fiscal year that has already ended and the funds expended.

AFFIRMED.

Judges ELMORE and ERVIN concur.