NO. COA13-893-2

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

THOMAS JEFFERSON CLASSICAL ACADEMY
CHARTER SCHOOL, PIEDMONT COMMUNITY
CHARTER SCHOOL AND LINCOLN CHARTER
SCHOOL,
    Plaintiffs,

       v.                             Cleveland County
                                     No.  12 CVS 41

CLEVELAND COUNTY BOARD OF
EDUCATION, D/B/A CLEVELAND COUNTY
SCHOOLS,
    Defendant.

Appeal by defendant from Judgment entered on or about 13 February 2013 and Order and Judgment entered 2 April 2013 by Judge Jesse B. Caldwell III, in Superior Court, Cleveland County. Heard in the Court of Appeals 23 January 2014 and Opinion filed 3 June 2014. Petition for Rehearing allowed 10 July 2014.

     *Robinson Bradshaw & Hinson, P.A., by Richard A. Vinroot and Matthew F. Tilley, for plaintiffs-appellees.*

     *Tharrington Smith, L.L.P., by Deborah R. Stagner, for defendant-appellant.*

     *Allison B. Schafer and Christine T. Scheef for N.C. School Boards Association, amicus curiae.*

STROUD, Judge.

The Cleveland County Board of Education, d/b/a Cleveland County Schools ("CCS" or "defendant"), appeals from the judgment entered by the trial court on or about 13 February 2013, wherein it concluded that certain funds that CCS had placed in Fund 8 should have been placed into the local current expense fund and distributed on a *pro rata* basis to the plaintiff charter schools. CCS also appeals from an order awarding plaintiffs attorneys' fees.

On 3 June 2014, we filed an opinion holding that the 2010 amendments applied to the present case as clarifying amendments. Plaintiffs filed a petition for rehearing, which we allowed. Upon reexamination, we clarify the definition of "restricted" funds as used in our prior case law and applicable to the school year in question without relying on the subsequent amendments. We remand for the trial court to apply the correct definition of "restricted" funds and to make appropriate findings of fact. We reverse the trial court's order awarding attorneys' fees.

## I.   Background

On 9 January 2012, Thomas Jefferson Classical Academy Charter School, Piedmont Community Charter School, and Lincoln Charter School ("plaintiffs") filed a complaint in superior court, Cleveland County, alleging that CCS had failed to pay

them the proper per-pupil amount required by statute. Plaintiffs specifically contended that CCS wrongfully moved approximately $4.9 million from the local current expense fund, which must be shared with the charter schools, to a "special revenue fund," which is not shared. Plaintiffs alleged that they were owed approximately $102,480. Plaintiffs sought a declaratory judgment that CCS must allocate the funds as plaintiffs contended the statute required, recovery in the amount of $102,480, and attorneys' fees under N.C. Gen. Stat. § 6-19.1. CCS answered, denying that their transfer of the funds to the special revenue fund violated any of the applicable statutes and that plaintiffs were owed anything.

The case was tried by the superior court sitting without a jury. The parties each presented evidence to support their claims. Plaintiffs primarily relied on the testimony of David Lee, financial director for CCS. Mr. Lee prepared an audit report of CCS' finances, which used various state budget codes for different revenue sources. Many of the funding sources that CSS had placed in the special revenue fund were classified by Mr. Lee as "unrestricted." Defendant presented a number of witnesses who administered various programs within the CCS system who testified about their funding sources and the use of

those funds. After two days of testimony, the trial court took the matter under advisement.

The trial court entered its judgment on 21 February 2013, wherein it found that defendant had misappropriated approximately $2,781,281 that should have been placed in the current expense fund rather than the special revenue fund. It found that Mr. Lee had admitted that $2,109,377 of the funds, called "Column A," were "unrestricted." It further found, based on Mr. Lee's testimony and that of the other CCS administrators, that $671,904 of the funds, listed under "Column B" and "Column C" were "(a) part of moneys made available to CCS for its current operating expenses, (b) used by CCS to operate its general K-12 programs and activities, and (c) not restricted to purposes outside CCS's general educational programs." It concluded that defendant owed plaintiffs $57,836 collectively and entered judgment against CCS in that amount. Defendant filed written notice of appeal from the 21 February 2013 judgment on 18 March 2013.

Plaintiffs then filed a petition for attorneys' fees under N.C. Gen. Stat. § 6-19.1(a). The trial court, by order and judgment entered 2 April 2013, granted plaintiffs' petition and awarded them $47,195.90 in attorneys' fees. Defendant filed

written notice of appeal from the 2 April 2013 judgment and order on 30 April 2013.

## II.   "Restricted" Funds

Defendant argues that the trial court erred in finding that various revenue sources were not "restricted" and concluding that these funds were therefore subject to a per-pupil distribution to the plaintiff charter schools. We clarify the definition of "restricted" funds, hold that the trial court did not make sufficient findings of fact to support its judgment, and remand for further proceedings.

### A.   Standard of Review

> When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. . . . Evidence must support the findings, the findings must support the conclusions of law, and the conclusions of law must support the ensuing judgment.

*Jackson v. Culbreth*, 199 N.C. App. 531, 537, 681 S.E.2d 813, 817 (2009) (citations, quotation marks, and brackets omitted).

### B.   Charter School Funding and the Uniform Budget Statute

The allocation of funds between local school administrative units and charter schools is governed by N.C. Gen. Stat. § 115C-238.29H (2009). That statute requires the local school

administrative unit to "transfer to the charter school an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year." N.C. Gen. Stat. § 115C-238.29H(b). This Court has interpreted the phrase "local current expense appropriation" to be "synonymous with the phrase 'local current expense fund' in the School Budget and Fiscal Control Act, N.C.G.S. § 115C-426(e)." *Francine Delany New School for Children, Inc. v. Asheville City Bd. of Educ.*, 150 N.C. App. 338, 347, 563 S.E.2d 92, 98 (2002), *disc. rev. denied*, 356 N.C. 670, 577 S.E.2d 117 (2003). We have further held that charter schools "are entitled to an amount equal to the per pupil amount of all money contained in the local current expense fund." *Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 188 N.C. App. 454, 460, 655 S.E.2d 850, 854 (*Sugar Creek I*), *disc. rev. denied*, ___ N.C. ___, 667 S.E.2d 460 (2008). It is immaterial that the school board has earmarked particular funds for a specific purpose if the funds have been deposited in the local current expense fund. *Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 195 N.C. App. 348, 360-61, 673 S.E.2d 667, 676 (*Sugar Creek II*) (holding, *inter alia*, that the trial court did not err in concluding that funds designated for students affected by

Hurricane Katrina were subject to per-pupil distribution to charter schools because they were placed in the current local expense fund, as opposed to a separate fund), *disc. rev. denied*, 363 N.C. 663, 687 S.E.2d 296 (2009).

The local current expense fund is defined by N.C. Gen. Stat. § 115C-426(e) (2009)[1]:

> The local current expense fund shall include appropriations sufficient, when added to appropriations from the State Public School Fund, for the current operating expense of the public school system in conformity with the educational goals and policies of the State and the local board of education, within the financial resources and consistent with the fiscal policies of the board of county commissioners. These appropriations shall be funded by revenues accruing to the local school administrative unit by virtue of Article IX, Sec. 7 of the Constitution, moneys made available to the local school administrative unit by the board of county commissioners, supplemental taxes levied by or on behalf of the local school administrative unit pursuant to a local act or G.S. 115C-501 to 115C-511, State money disbursed directly to the local school administrative unit, and other moneys

---

[1] This statute has since been amended twice, but neither of these amendments applies to the 2009-2010 school year. N.C. Sess. Laws 2010-31, § 7.17(c)(stating that the amendments apply beginning with the 2010-2011 school year); N.C. Sess. Laws 2013-355, § 2(a), § 8 (amending § 115C-426 and stating that the amendments become effective when the act becomes law but do not affect pending litigation); *Charter Day School, Inc. v. New Hanover County Bd. of Educ.*, ___ N.C. App. ___, ___ n.4, 754 S.E.2d 229, 235 n.4 (2014) (noting that the amendments do not apply "retroactively").

> made available or accruing to the local school administrative unit for the current operating expenses of the public school system.

N.C. Gen. Stat. § 115C-426(c) also permits the creation of "other funds . . . to account for trust funds, federal grants restricted as to use, and special programs." Thus, we have held that "the provisions of Chapter 115C . . . do not require that all monies provided to the local administrative unit be placed into the 'local current expense fund' (Fund Two)." *Thomas Jefferson Classical Academy v. Rutherford County Bd. of Educ.*, 215 N.C. App. 530, 543, 715 S.E.2d 625, 633 (2011), *disc. rev. denied and app. dismissed*, ___ N.C. ___, 724 S.E.2d 531 (2012). "Restricted funds" kept in a fund separate from the local current expense fund are exempt from per-pupil distribution to the charter schools. *Id.* at ___, 715 S.E.2d at 630 ("[I]f funds are placed in the 'local current expense fund' and not held in a 'special fund,' they must be considered as being part of the 'local current expense fund' used to determine the *pro rata* share due to the charter schools."). The local school board has the authority to place such restricted funds in a separate fund. *Id.* at ___, 715 S.E.2d at 634 ("*Sugar Creek I* and *II* clearly indicate that it is incumbent upon the local administrative unit to place restricted funds into a separate fund."); *Sugar Creek I*, 188 N.C.

App. at 460-61, 655 S.E.2d at 855. However, we have never defined what "restricted funds" are or who has the authority to make that determination.

Thus, there are two fundamental questions we must address here: (1) does the local school board have discretionary authority to allocate funds into the local current expense fund or a separate fund as it sees fit?; and if not, (2) did defendant here properly classify the funds at issue as restricted?

N.C. Gen. Stat. § 115C-426(e) states that the local current expense fund

> *shall* be funded by revenues accruing to the local school administrative unit by virtue of Article IX, Sec. 7 of the Constitution, moneys made available to the local school administrative unit by the board of county commissioners, supplemental taxes levied by or on behalf of the local school administrative unit pursuant to a local act or G.S. 115C-501 to 115C-511, State money disbursed directly to the local school administrative unit, and other moneys made available or accruing to the local school administrative unit for the current operating expenses of the public school system.

"It is well established that the word 'shall' is generally imperative or mandatory." *Chandler ex rel. Harris v. Atlantic Scrap & Processing*, ___ N.C. App. ___, ___, 720 S.E.2d 745, 750

(2011) (citation and quotation marks omitted), *aff'd and remanded*, ___ N.C. ___, 749 S.E.2d 278 (2013). Consistent with this Court's decisions in *Sugar Creek I*, *Sugar Creek II*, and *Thomas Jefferson*, as well as the plain language of N.C. Gen. Stat. § 115C-426(e), we conclude that the local school administrative unit may deposit any "restricted" funds into a fund separate from the current expense fund. *See Thomas Jefferson*, 215 N.C. App. at 544, 715 S.E.2d at 634; *Sugar Creek I*, 188 N.C. App. at 460, 655 S.E.2d at 855. By contrast, any funds covered by N.C. Gen. Stat. § 115C-426(e) must be deposited into the local current expense fund. We further conclude that the determination of which funds may be placed in a separate fund is a question of law and not solely in the discretion of the local school board, given the mandatory language found in the budget statute. *See Chandler*, ___ N.C. App. at ___, 720 S.E.2d at 750 (holding that the Industrial Commission has no discretion in determining an interest award when the relevant statute employed the word "shall").

Because the issue of whether funds are "restricted" or not is an issue of law, we further hold that the determination of whether funds that accrued to the local school administrative unit were "restricted" is a conclusion of law rather than a

finding of fact. "A 'conclusion of law' is a statement of the law arising on the specific facts of a case which determines the issues between the parties." *Puckett v. Norandal USA, Inc.*, 211 N.C. App. 565, 570, 710 S.E.2d 356, 359 (2011) (citation and quotation marks omitted). Relevant findings of fact would concern the origin, purpose, and ultimate use of the funds, not their designation as "restricted."

C. Defining "restricted" funds

"Restricted" is not a term found in any of the relevant statutes. Rather, it is a gloss this Court has put on the statutory definitions found in N.C. Gen. Stat. § 115C-426. It was the Court's shorthand for those monies that can be placed in a separate fund, i.e. those from "trust funds, federal grants restricted as to use, and special programs" which must be accounted for separately. N.C. Gen. Stat. § 115C-426(c). We have already held that a donor of "restricted funds" does not need to require that they be placed in a separate fund for the local school administrative unit to do so. *Thomas Jefferson*, 215 N.C. App. at 543, 715 S.E.2d at 634. Thus, the question is not what accounting method was required by the donor, but whether the funds have a limited use and specific purpose, such as to fund a special program. *See Sugar Creek I*, 188 N.C. App. at 460, 655

S.E.2d at 855. Moreover, "federal grants restricted as to use[] and special programs" clearly have operating expenses and most will serve some portion of the K-12 population, but that fact does not make the funds "unrestricted."

The guidance from the Department of Public Instruction that we reviewed in *Thomas Jefferson* indicated that Fund 8 was a new, separate fund "to separately maintain funds that are restricted in purpose and not intended for the general K-12 population in the LEA." *Thomas Jefferson*, 215 N.C. App. at 537, 715 S.E.2d at 630. This definition nicely captures the Legislature's intent in allowing local school administrative units to separate special funds from the local current expense fund.

The use of funds to operate a program for the K-12 population does not make the funds unrestricted. Instead, unrestricted funds are those that could be used for *all* of the K-12 population *without restriction.* To label any funds which serve even a portion of the K-12 population as "unrestricted" would contravene the legislature's intent to allow local school administrative units to place monies from grants "restricted as to use" or funds for "special programs" into a separate fund. Nearly any funds (except those for Pre-K programs) given as a grant to a local school administrative unit will be used to

operate *some* program for *some* of the K-12 population. Based on the prior cases and the language of the applicable statutes, we define "restricted" funds as those funds which have been designated by the donor for some specific program or purpose, rather than for the general K-12 population of the local school system.

The local school administrative unit should place such restricted funds into a fund separate and apart from the local current expense fund, and if it fails to do so, the funds may lose their "restricted" status. *See id.* at ___, 715 S.E.2d at 634 (holding that "it is incumbent upon the local administrative unit to place restricted funds into a separate fund."); *Sugar Creek II*, 195 N.C. App. at 361, 673 S.E.2d at 676 ("If donations or other moneys are intended for special programs, they should be held in a special fund.").

D. Application

The trial court's judgment included no findings on the origins or nature of the funds for each source of funding. Instead, the trial court assessed the programs in bulk as either "restricted" or "unrestricted." It did so apparently on the basis that Mr. Lee testified that these particular funds were "unrestricted." First, we note that it is unclear what Mr.

Lee's understanding of the definition of "restricted" was, as this was never explicitly stated, but he seems to have based his characterization of the funds on the state budget codes he used for each funding source. As both Mr. Lee and Mr. Merritt, the expert witness called by plaintiffs, acknowledged, the budget codes do not dictate how the funds are spent and funds classified as "unrestricted" may still have a specific purpose. Given our definition of "restricted" funds, we believe that the trial court's current findings of fact are inadequate for us to review its conclusion that various funds were "unrestricted" when it failed to make findings on the origins, purposes, and uses of the challenged funds. The fact that Mr. Lee may have classified funds of a certain origin as "unrestricted" is not dispositive of the issue.

Although we agree with the dissent that the definition of "restricted funds" may be complex in its application, we believe that the complexity is unavoidable, considering the prior case law and statutory language which we must follow. All students served by both the public school systems and charter schools throughout the state must be treated equally and the law must be applied uniformly in all of the school systems. If the local school boards and trial courts have no clear definition of

"restricted funds," even if all are acting in good faith and seeking to comply with the governing statutes, different school boards and trial courts may determine their own differing definitions and thus allocate funds differently. In fact, in this case, various witnesses seemed to have different ideas of the definition of "restricted funds." We also agree that the complexity of identifying "restricted funds" may foster additional litigation, but the absence of a definition of the term probably fosters even more litigation. Fortunately, our legislature has recently amended N.C. Gen. Stat. § 115C-426 and this amendment should clarify the identification of the funds which the General Assembly intends to be included in the local current expense fund. Unfortunately, this amendment does not apply to this case.

Given the extensive record and the facts in evidence as to each program, we believe that there is sufficient evidence in the record for the trial court to make specific findings about the funds at issue here. Therefore, we remand this case for the trial court to enter a revised judgment with specific findings about the origins, purpose, and uses of the various funding sources at issue and appropriate conclusions applying the definition of "restricted" funds outlined above.

### III. Attorneys' Fees

Defendant next argues that the trial court erred in awarding plaintiffs attorneys' fees under N.C. Gen. Stat. § 6-19.1 because a local school board is not a state agency. We agree.

N.C. Gen. Stat. § 6-19.1 (2011) allows the trial court to award attorney's fees to a party prevailing over a state agency in a civil action. This Court has held that the definition of "agency" for the purposes of § 6-19.1 is the same as the definition of an "agency" under the Administrative Procedures Act (APA). *Izydore v. City of Durham (Durham Bd. of Adjustment)*, ___ N.C. App. ___, ___, 746 S.E.2d 324, 326, *disc. rev. denied*, ___ N.C. ___, 749 S.E.2d 851 (2013). The APA defines an "agency" as

> an agency or an officer in the executive branch of the government of this State and includes the Council of State, the Governor's Office, a board, a commission, a department, a division, a council, and any other unit of government in the executive branch. *A local unit of government is not an agency.*

N.C. Gen. Stat. § 150B-2(1a) (2011) (emphasis added). Accordingly, we have held that local governmental units, like municipalities and counties, are not subject to the attorney's fees provisions of N.C. Gen. Stat. § 6-19.1. *Izydore*, ___ N.C.

App. at ___, 746 S.E.2d at 326 (holding that "local governmental units—such as respondents—are not 'agencies' for purposes of § 6-19.1."). Local school boards and local school administrative units are local governmental units, and, as such, are not "agencies" for the purpose of the APA. *See* N.C. Gen. Stat. § 115C-5(5)-(6) (defining "local school board" as "a city board of education, county board of education, or a city-county board of education" and a "local school administrative unit" as "a subdivision of the public school system which is governed by a local board of education. It may be a city school administrative unit, a county school administrative unit, or a city-county school administrative unit."); *Coomer v. Lee County Bd. of Educ.*, ___ N.C. App. ___, ___, 723 S.E.2d 802, 803 (observing that "local boards of education are generally excluded from the requirements of the APA."), *disc. rev dismissed*, 366 N.C. 238, 731 S.E.2d 427, *disc. rev. denied*, 366 N.C. 238, 731 S.E.2d 428 (2012).

Plaintiffs contend that the local school boards are subject to § 6-19.1 because we have held that they "are deemed agents of the State for purposes of providing public education." *Kiddie Korner Day Schools, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 55 N.C. App. 134, 140, 285 S.E.2d 110, 114 (1981), *app.*

*dismissed and disc. rev. denied*, 305 N.C. 300, 291 S.E.2d 150 (1982). Yet, our Supreme Court has noted that "[a]n agent of the State and a state agency are fundamentally different . . . ." *Meyer v. Walls*, 347 N.C. 97, 107, 489 S.E.2d 880, 885 (1997); *see also Green v. Kearney*, 203 N.C. App. 260, 272, 690 S.E.2d 755, 764 (2010) (noting the distinction between a state agent and a state agency). In that same opinion, the Supreme Court quoted a prior opinion for the proposition that "[i]n no sense may we consider the [Local] Board of Education in the same category as the State Board of Education . . . ." *Meyer*, 347 N.C. at 106, 489 S.E.2d at 885 (citation and quotation marks omitted). Thus, local school boards are not state agencies for purposes of the APA and N.C. Gen. Stat. § 6-19.1 simply because they may be considered agents of the State in certain circumstances.

We hold that the trial court erred in awarding plaintiff attorney's fees under N.C. Gen. Stat. § 6-19.1 because defendant is not an agency for purposes of that statute. Therefore, we reverse the trial court's order allowing plaintiff's petition for attorneys' fees.

## IV. Conclusion

For the foregoing reasons, we remand for the trial court to enter a revised judgment with appropriate findings of fact and conclusions of law as to the funds at issue. We further reverse the trial court's order awarding plaintiffs attorneys' fees.

REMANDED in part; REVERSED in part.

Judge DILLON concurs.

Judge HUNTER, JR., Robert N. concurs in part and dissents in part by separate opinion.

NO. COA13-893-2

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

THOMAS JEFFERSON CLASSICAL ACADEMY
CHARTER SCHOOL, PIEDMONT COMMUNITY
CHARTER SCHOOL AND LINCOLN CHARTER
SCHOOL,
    Plaintiffs,

    v.                         Cleveland County
                                   No. 12 CVS 41

CLEVELAND COUNTY BOARD OF
EDUCATION, D/B/A CLEVELAND COUNTY
SCHOOLS,
    Defendant.


HUNTER, JR., Robert N., Judge, concurring in part, dissenting in part.


    I dissent from Section II of the majority opinion.  The majority's definition of "restricted" funds adds unnecessary complexity to this Court's body of cases addressing school funding disputes between charter schools and local school boards.[2]  The majority's definition is overly broad and may allow local school boards to sequester funds as "restricted" which should be apportioned to charter schools under N.C. Gen. Stat.

---

[2] As an initial matter, I agree with the majority that the holding in this case is limited to a small subset of funding disputes between charter schools and local education authorities due to the General Assembly's changes to N.C. Gen. Stat. § 115C-426 (2009).  2013 N.C. Sess. Laws 965, 978-80.

§§ 115C-238.29H(b), 115C-426(c) (2009).  For these reasons, I respectfully dissent.[3]

The majority defines "restricted" funds as "those funds which have been designated by the donor for some specific program or purpose, rather than for the general K-12 population of the local school system" and notes the requirement of *Thomas Jefferson I* that these funds be placed into a separate fund from the local current expense fund.  *Thomas Jefferson I*, ___ N.C. App. at ___, 715 S.E.2d at 634.  The majority then remands to the trial court for further findings of fact concerning the "origins, purpose, and uses of the various funding sources at issue" that it must then apply to this newly constructed definition of "restricted" funds.

In *Union Acad. v. Union Cnty. Pub. Sch.*, ___ N.C. App. ___, 735 S.E.2d 452, 2012 WL 5857373 (2012) (unpublished) this Court instructed the trial court on remand to determine, based on the rules set forth in *Thomas Jefferson I*, "the amount of restricted funds properly placed" in a separate fund.  *Id.* at *5.  Notably, this Court said "[w]ithout specific evidence as to what the funds in UCPS' Fund 8 actually were, any attempt by this panel

---

[3] I agree with the majority opinion concerning attorneys' fees in Section III.

to define 'restricted funds' would amount to an improper advisory opinion." *Id.* at *4.

Here, the trial court followed the exact procedure prescribed by *Union Academy*: the trial court collected what the majority describes as an "extensive record" and then examined the nature of the funds. The trial court relied on the testimony of the Chief Financial Officer of Cleveland County Schools ("CCS") to find as fact that $2,109,377 of the funds at issue in Column A were unrestricted in nature. The trial court then found as fact that the roughly $671,904 at issue in Columns B and C were funds used for "(a) part of 'moneys made available' to CCS for its 'current operating expenses,' (b) used by CCS to operate its general K-12 programs and activities, and (c) not restricted to purposes outside CCS's general educational program . . . ." As the trial court properly took evidence, considered the "nature" of the funds, and determined that the funds were unrestricted in nature, the trial court has already followed the proper procedure under *Thomas Jefferson I* and the example provided in *Union Academy*. Accordingly, I would affirm the trial court.

The majority's definition unnecessarily adds a layer of complexity and will foster further litigation relating to

charter school funding disputes for the 2009-10 school year. Funds appropriated by a donor to a local school district and designated for a "specific program or purpose" conceivably captures a wider variety of programs intended to benefit the general K-12 population of a local school system, including charter school students. This Court's prior cases have already lead to local school units "increasingly allocat[ing] monies for operating expenses to funds other than the local current expense fund"[4] as well as a bevy of litigation discussed *supra*. Creating an additional avenue for argument—that a particular budgetary item is a "specific program" or has a "specific purpose"—will only exacerbate those trends. For the foregoing reasons, I respectfully dissent.

---

[4] *See* Kara Millonzi, *Allocating Operating Monies Among Local School Unit Funds: Local Current Expense Fund vs. Fund 8*, Coates' Canons: NC Local Government Law, Univ. of N.C. Sch. Of Gov't. (June 10, 2014), http://canons.sog.unc.edu/?p=7721; *see also* Lisa Lukasik, *Deconstructing a Decade of Charter School Funding Litigation: An Argument for Reform*, 90 N.C. L. Rev. 1885, 1918 (2012) ("After the court of appeals' charter school-funding trilogy and the subsequent regulatory and legislative changes . . . the base amount of local per pupil funding for charter schools may fluctuate depending upon how local boards of education account for 'other' funds.").