BRYANT, Judge, concurring in part and dissenting in part.
I concur in the majority opinion affirming the trial court's findings and conclusions regarding the restricted or nonrestricted nature of certain funds; however, I dissent from the majority's holding that the trial court's findings of fact and conclusions of law support its determination that "indirect costs" and "E-rate" funds are nonrestricted.
Indirect Costs
The majority opinion holds that the trial court did not err in finding and concluding that "indirect costs," which are a percentage of the total federal grant funding that pays for the operating expenses incurred by the school system to implement federally funded grant programs, are nonrestricted revenues. I respectfully disagree with this holding. This Court has noted that " 'federal grants restricted as to use' ... clearly *818 have operating expenses ... but that fact does not make the funds 'unrestricted.' " Thomas Jefferson et al. v. Cleveland Cnty. Bd. of Educ., --- N.C.App. ----, ----, 763 S.E.2d 288, 293 (2014) ("Thomas Jefferson II ") (instructing the trial court on remand to determine whether funds are restricted). The trial court specifically found that CCS received indirect costs "in connection with its operation of federal programs." Because the origin of revenue for indirect costs was the federal grants themselves, and because the federal grant money was restricted to specific purposes, the funding for operating expenses incurred in connection with those grants is likewise restricted.
Additionally, even though the trial court found that "[t]he federal government [did] not place any restrictions on how CCS uses the reimbursements it received for indirect costs," it nonetheless acknowledges those funds are received in connection with CCS's operation of federal programs. See id. ("[W]e define 'restricted' funds as those funds which have been designated by the donor for some specific program or purpose....").
Finally, the majority opinion focuses quite a bit on Mr. Lee's testimony. With regard to his testimony, it is notable that the trial court found that indirect costs "consisted of reimbursements from the federal government,"
*308 when Mr. Lee testified exactly to the contrary. He testified that indirect costs "are not reimbursements at all. They are in fact a part of the full [federal] grant." It is unclear from the record that there is evidence to support this finding of fact by the trial court. Further, the findings by the trial court confirm that the origin and purpose of the indirect costs were restricted. Here, the trial court found that "CCS received [the indirect costs] in connection with its operation of federal programs," whose funds were restricted. To then say that the government placed no restriction on the use of those funds is not supported by the record, and further, violates the mandate of the Court in Thomas Jefferson II as to the definition of "restricted" funds. See id. For these reasons, I disagree with the majority opinion regarding indirect costs, and would hold that the indirect costs are restricted funds.
E-Rate
The majority opinion also holds that the trial court did not err in finding and concluding that E-Rate funding was made available by the federal government for unrestricted use for the entire K-12 population and was not used for any special program. Again, I disagree.
*819 The majority opinion, as did the trial court, disregards the origin of the E-Rate funds. The trial court's findings are insufficient to support its conclusion that the E-Rate funds are not restricted. The trial court, in defiance of the mandate of Thomas Jefferson II, made conclusory findings as to use, but failed to make findings concerning the funds' origin and purpose. While it is true that all CCS students, staff, and even bus drivers could use the Internet and telecommunications services provided for by the E-Rate funds, the funds were essentially restricted because of the nature of the strict application and approval process, which goes towards the funds' "origin and purpose." See id. at ----, 763 S.E.2d at 294 (instructing the trial court on remand to determine whether funds are restricted by examining and making findings of fact about the origins, purpose, and uses of the challenged funds). Evidence in the record shows that the funds originated from the federal government for very specific technological purposes and that the funds were used for those specific purposes.
Specifically, E-Rate funds are made available to reimburse a school only after certain pre-approved purchases are made. CCS was required to obtain approval for the purchase of qualified technology services in advance and only then could the school system purchase the service. Once CCS purchased the pre-approved telecommunications and internet access, the school system was eligible to submit an application for reimbursement at a set rate.
E-Rate funding was not made available by the federal government for unrestricted use for the entire K-12 population. Rather, the E-Rate funds were provided by the federal government for a specific purpose. Therefore, the trial court's finding of fact which includes the statement that "[t]he federal government does not restrict the use of the reimbursement funds once received by CCS," is not supported by the evidence. To the contrary, the evidence established that E-rate funds would never have been provided to defendant but for its compliance with the federal government's lengthy and detailed approval process to ensure that only qualified technology services were purchased.
Despite who ultimately benefited from the use of the technology, the funds were restricted in that pre-approval was required and the funds were used for their specified purpose. Accordingly, I would reverse the trial court and find that the E-rate funds were restricted by the donor-the federal government-and required to be used for a specific purpose.